FITCH and another *v.* BRAGG & Co.[*]

*(Circuit Court, D. Connecticut.* April 17, 1883.)

**1. PATENTS—INFRINGEMENT—PART OF DEVICE—MEASURE OF DAMAGES.**
When reduction of prices in the plaintiffs' sales is the only element of damages, if the essential feature of plaintiffs' structure and of the infringing structure respectively is the patented device, and the patented device, being only a part of the structure, must necessarily be embodied in the complete structure for sale, and he is enabled by the presence of such patented device to make his profit on the entire structure, and he is deprived, by the acts of the defendants in selling at low prices infringing structures containing the patented device, of the profits which he otherwise would have made on the structures containing the patented device whch he actually sold, the defendants' infringement must be *held* to have caused the entire loss of plaintiffs by the reduction of prices, after allowing a proper sum for any other patented device contained in defendants'

[*]Reversed. See 7 Sup. Ct. Rep. 978.

structure, and for any other cause which gave to the defendants an advantage in selling their structures.

2. SAME—PROOF OF DAMAGE BY PLAINTIFF.

The principle that plaintiff must affirmatively show, by satisfactory evidence, how much of the damage was attributable to the infringement, does not mean that, after he has proved that the infringement was the sufficient operative cause of the entire damage, and has refuted all the suggestions of contributory causes which the defendant made, he must disprove the existence of all the possible causes which might have existed, but which it was not suggested ever did exist.

Exceptions to Master's Report.

*John S. Beach*, for plaintiffs.

*Wm. Edgar Simonds*, for defendants.

SHIPMAN, J.    The present questions in this case arise upon the defendants' exceptions to the master's report.   He has reported that the defendants made and sold between October 1, 1879, and September 20, 1881, 3,667¼ gross of infringing snap-hooks; that there was no testimony from which it could be found that profits accrued to them from the sale; and that the plaintiffs suffered damages by the unlawful acts of the defendants in two ways: *First*, through the enforced reduction in the selling price of their goods caused by the competition of the defendants' infringing snap-hooks; and, *second*, through the loss of profits which the plaintiffs would have made by the sales of their snaps, if the infringing snaps of the defendants had not been put upon the market.

The master finds that the plaintiffs' damage in the first of said ways was the sum of $4,259.07, and that no part of the reduction was due to any of the causes which were named by the defendants, the chief one being the alleged competition of different snap hooks other thant hose made by them.   He further finds that a sufficient operative cause for such damage existed in the competition of the defendants' infringing snap, and that the characteristic feature of the plaintiffs' snap, as a finished article, by which it acquired its position in the market, was the side recess in a swinging tongue, and that this feature appeared in the defendants' snaps, and that they were in direct competition with the plaintiffs' article.

Upon the second element of damage the master finds that the plaintiffs would have sold during the infringing period at least 3,126 gross of their snaps above the quantity actually sold by them, if the infringing snaps had not been in the market, but that the testimony as to the cost of manufacture and sale was so meager that he was unable to make any finding as to the extent of the plaintiffs' damage from the loss of profits on sales of which they were deprived by the

unlawful acts of the defendants. The defendants have filed 11 exceptions. The two material classes of exceptions are to the effect that the evidence did not justify a finding that the plaintiff's reduction in prices was wholly caused by the competition of the infringing snap-hooks, and that the master found in favor of the plaintiffs their damage upon the sale of the snaps as a completed article containing both patented and unpatented features, whereas he should have found the part of the damage, if any, which resulted from the decrease in price in the patented part of the snap-hook. Upon the first class of exceptions, the defendants say that during the infringing period other hooks than either theirs or the plaintiffs', having a side recess in a swinging tongue, were in the market, and helped the competition and helped to decrease the prices.

It is to be noticed that the damages which are found in favor of the plaintiffs result only from an enforced reduction in prices. The plaintiffs have been manufacturing their hook since 1865. Judd and Blakeslee and the Middletown Tool Company, or its successor, have been their competitors in snap-hooks since that date, while the snap-hooks Nos. 1 and 2, of O. B. North & Co., have competed with their article for 12 and 10 years respectively. No one of these hooks ever affected the plaintiffs' prices. The same is true of the Mosher and Anchor hook, and it may be remarked that there was no evidence of importance upon the part of the defendants tending to show that these other competing snap-hooks had an effect in the reduction of prices. The defendants claimed that the O. B. North & Co. hook was both a competitor and a plain infringer, and that, therefore, it was unjust to visit upon them all the consequences of the infringement. It is immaterial to the issues of this case whether this snap-hook is or is not an infringement of the plaintiffs' patent, if it has not reduced their prices. If it has not injured the plaintiffs in this regard, its presence in the market does not lighten the burden of the defendants.

The next and important exception relates to the fact that the master made no apportionment of the reduction in price between the patented and the unpatented parts of the snap-hook. A harness snap-hook of the general class to which the plaintiffs' article belongs is a little device consisting of a hook and a tongue so actuated by a torsional spring that the hook is prevented from disengagement from the ring to which it may be attached. A hook is, of course, a necessary part of the device, but the hook part of the various snap-hooks is substantially the same. The difference between the different kinds

of harness snap-hooks consists substantially in the methods in which the tongue and spring are constructed and arranged with reference to each other, and thus the springing tongue, by which is meant the tongue with the spring, is the distinctive or characteristic part of the device. It is not merely the essential feature of the plaintiff's hook, but it is the essential feature of all snap-hooks of this class. I do not mean by "essential" that it is the only important part of the completed article, but I mean that it is the part in which consists, and which makes the difference in the value of, different kinds of snap-hooks as marketable articles. The essential and characteristic feature of the plaintiffs' and defendants' snap-hooks is a swinging tongue with a side recess, and this feature makes the article what it has been in the market.

This statement of the nature of the device shows that the principle which is involved by the defendants, and which is perfectly true when applied to a certain state of facts, is not applicable to the facts in this case; the principle being that, when the patented thing is a mere improvement in a part of a device, the proof of damages resulting from an infringement must be limited accordingly. The plaintiffs' snap-hook is an improvement upon the Judd and other snap-hooks, in that it is a new and better way of constructing and arranging the same tongue and the same spring, and therefore the defendants say that the damages must be limited to those which result from the improper use of the plaintiffs' improvement upon the Judd hook. But the Bristol snap-hook is not a mere improvement upon the Judd hook. The Judd device has a tongue and a spring made and arranged in a way of its own, which method makes the article a marketable article. The plaintiffs' snap-hook has its tongue and its spring made and arranged in a certain other way, which gives to the device its value as a finished article in the market. But the defendants further say that the device is composed of an unpatented hook and a swinging tongue, and that the enforced reduction in price was fully as much upon the hook as upon the tongue; whereas the master gave the entire reduction as damages, when it was the duty of the plaintiffs to prove, and of the master to find, if a sufficient basis was furnished for the finding, how much of the damage was due to the infringement of the patented part.

While it is not true that the tongue is the whole of the device, or that the hook is not an indispensable part of it, yet the tongue is the peculiar and variable, and, as has been said, essential feature in all snap-hooks of this class, and the hook is the unvarying feature to

which the tongue is attached. Both together constitute a snap-hook, and the patented tongue must, in connection with an unpatented hook, be placed in the form of a snap-hook for sale. This state of facts brings the case within the principle which is stated in *Sargent* v. *Yale Lock Manuf'g Co.* 17 Blatchf. C. C. 244, and which is that when reduction of prices in the plaintiff's sales is the only element of damages, if the essential feature of the plaintiff's structure and of the infringing structure, respectively, is the patented device, and the patented device, being only a part of the structure, must necessarily be embodied in the complete structure for sale, and he is enabled by the presence of such patented device to make his profit on the entire structure, and he is deprived, by the acts of the defendant in selling at low prices infringing structures containing the patented device, of the profit which he otherwise would have made on the structures containing the patented device, which he actually sold, "it seems plain that the defendant's infringement must be held to have caused the entire loss of the plaintiff by the reduction of prices, after allowing a proper sum for any other patented device contained in the defendant's" structures, "and for any other cause, which gave to the defendant an advantage in selling his" structures.

Each of the various kinds of snap-hooks had its share of the trade. The plaintiffs' article had its share of success, and their prices were not interfered with until the defendants appeared with their snap-hook, which contained the plaintiffs' distinctive feature. In this state of facts, the plaintiffs affirmatively claimed that the reduction was owing entirely to the infringement, and also denied that it was attributable in any respect to any of the causes which were suggested by the defendants. It has occurred to me that the reduction might have been owing, in part, to the commercial success and enterprise of the defendants in pushing their goods upon the market and in effecting sales where the plaintiffs could not; but no exception was taken to the master's report on this ground, and the suggestion was not made before him, and I do not suppose that the principle that the plaintiff must affirmatively show, by satisfactory evidence, how much of the damage was attributable to the infringement, means that, after he has proved that the infringement was the sufficient operative cause of the entire damage, and has refuted all the suggestions of contributory causes which the defendant made, he must disprove the existence of all the possible causes which might have existed, but which it was not suggested ever did exist.

The defendants' exceptions are overruled.