HOLMES et al. v. TRUMAN et al.

(Circuit Court of Appeals, Ninth Circuit. March 6, 1895.)

No. 176.

1. PATENTS—WHAT CONSTITUTES INVENTION—FINDING OF JURY.
   Where the record shows that plaintiff's device was novel in construction, that it was useful, and that it went into immediate and general use, the appellate court cannot hold that the jury should have been instructed that there was no invention therein.

2. SAME—CONSTRUCTION OF CLAIM—INFRINGEMENT.
   A claim for metal straps having their ends secured to the shafts of a cart, and extending underneath the axle so as to support a footboard, should be construed as covering straps which are attached to the crossbar connecting the shafts, instead of the shafts themselves, and which are made of two pieces fastened together, instead of in one continuous piece.

3. SAME—MECHANICAL EQUIVALENTS.
   The use of a metal strap composed of two pieces, joined together by bolt and screw, is not the substitution of a mechanical equivalent, but is merely a change in the form of the strap.

4. SAME—INFRINGEMENT—MEASURE OF DAMAGES.
   Where a patent for an improvement in carts was limited merely to a device for sustaining the footboard, but the invention practically introduced a new cart, for which a demand at once arose, held that, in the absence of any proof that any carts of this form were ever constructed without the patented feature, the measure of damages for infringement was complainants' entire loss, it being impossible to separate the value of the patented cart from a cart which did not contain the invention.

5. TRIAL—INSTRUCTIONS—OFFER OF COMPROMISE.
   In a suit for infringement of a patent, defendant, while testifying, volunteered the statement that, after the action was commenced, he had offered $250 in settlement; and that plaintiffs demanded $350, and required that defendant should agree to pay a royalty, and to sell no carts below a certain price. Held, that the court properly refused defendants' request to charge that this offer of compromise should not be construed as an admission of any right in plaintiffs; for, while correct as a proposition of law, it was misleading, because it ignored the evidence relating to plaintiffs' proposition in response to that of defendants.

6. PATENTS—BREAKING CARTS.
   The Putnam patent, No. 232,207, for an improvement in breaking carts, held valid and infringed, sustaining the verdict of a jury.

Error from the Circuit Court of the United States for the Northern District of California.

This was an action at law by Irwin J. Truman and C. Osgood Hooker against Henry E. Holmes and M. P. Holmes for infringement of a patent relating to breaking carts. The circuit court entered a judgment for plaintiffs upon the verdict of a jury. Defendants brought error.

Wheaton, Kalloch & Kierce, for plaintiffs in error.
John L. Boone, for defendants in error.

Before GILBERT, Circuit Judge, and HAWLEY and HANFORD, District Judges.

GILBERT, Circuit Judge. The plaintiffs in error were the defendants in an action in the circuit court, brought against them on

account of the alleged infringement of United States letters patent No. 232,207, dated September 14, 1880, and issued to T. De Witt C. Putnam, for "an improved breaking cart." The trial resulted in a judgment for the plaintiffs in the action for the sum of $150, and costs.

Upon the writ of error, it is contended that the court erred in refusing, at the conclusion of the testimony in the case, to instruct the jury to return a verdict for the defendants in the action, for the reason that it was conclusively shown that the plaintiffs' improvement was without invention, and that the defendants had not infringed the same. The breaking cart which is the subject of the plaintiffs' patent is a low-bodied cart, in which the springs are supported directly upon the axle, with the shafts placed directly upon the springs. These shafts support the seat or cart body, and a footboard, upon which the driver rests his feet, is fastened to and supported by a metal strap on each side, which is attached to the shafts in front of the axle, extends downward at an angle, and is then bent so as to pass back underneath the axle, parallel with the shaft, and is then bent upward, and its rear end is fastened to the shafts behind the axle. By this construction the footboard moves vertically in unison with the seat and shafts. The advantage of this construction is that the seat is low with reference to the axle, and the driver sits easily and quietly, without deranging motion to his body, since the footboard and the seat move in unison. With reference to this advantage, the evidence is that there were before the plaintiffs' invention but two classes of two-wheeled vehicles. One was the common butcher's cart, in which the seat is built high above the shafts, so that the feet of the driver rest on a floor which is entirely above the springs. It was obviously impossible to construct a low cart in this manner. The other class was one in which the footrest was secured upon the axle or the shafts, while the seat was supported upon the springs. In this class of carts the body of the driver would move with the springs, while his feet would remain stationary. The patentee conceived the idea of making a low-seated cart, with the footrest supported below the shafts, and the axle between the springs and the seat, so that the axle was placed above the footrest, but beneath the springs and the seat. He placed the shafts on the springs, and the seat on the shafts, and supported the footrest underneath the axle by his metal straps.

The claim of the patent is as follows:

"The brace or straps, F, having their ends secured to the shafts before and behind the axle, while the central portion extends beneath the axle, and parallel with the shafts, and is adapted to support the transverse footboard, E, substantially as and for the purpose herein described."

It is impossible for the court to say, with reference to the testimony, that the jury should have been instructed that there was no invention in the plaintiffs' cart. The record shows that the cart was novel in construction, that it was useful, and that it went into immediate and general use. Counsel for the plaintiffs in error contend that there was nothing novel in the idea of suspending a foot-

board in such a way that its vertical movement would be common to that of the seat, and that a particular and specific improvement in the means of suspension was all that the patentee could claim; and they argue that the iron strap of the patent as a device for holding the footboard was not an invention, that the idea of such a strap was old, and that it was well known that two such straps, when hung parallel, would sustain anything laid across them. This view of the patent leaves entirely out of sight the essence of the plaintiffs' invention, which is not merely the fact that the footboard was hung beneath the shafts by iron braces, but that a cart was constructed with the seat directly above the springs and axle, thereby securing a low seat, with its advantages in connection with a breaking cart, and a footrest which should move in unison with the same. In other words, it was the arrangement of the footboard with reference to the other parts which was new.

Nor can we see that the court would have been warranted in taking the case from the jury on the ground that the plaintiffs failed to prove an infringement by the defendants. The bill of exceptions shows distinctly that one of the witnesses testified that the defendants had made and sold carts such as those made under the patent. There is other testimony to the same effect, from which the jury might reasonably infer that the carts built by the defendants were the same as those made by the plaintiffs. The defendants admit that they constructed a cart differing from that of the plaintiffs only in the fact that the forward ends of the straps, instead of being attached directly to the shafts, are attached to a crosspiece which connects the two shafts in front of the seat, and that, instead of being continuous straps, they were formed of two pieces, fastened together by nut and screw at the angle underneath and behind the axle; but they claim that the plaintiffs must be held to the specific construction described in their letters patent. We do not so construe the patent. The crossbar between the shafts is substantially a part of the shafts. It makes no difference, so far as the function of the straps is concerned, whether they are attached to the shafts or attached to a crossbar which connects the shafts; and it makes no difference whether the straps are one continuous piece or composed of two. It is true that the plaintiffs' patent does not cover any arrangement by which the seat and the footboard may be made to move in unison. Those results were obtained in the butcher's cart. But it is a fair interpretation of the plaintiffs' patent to say that they are protected in the use of a cart in which the shafts are placed directly upon the springs, and the footboard is sustained beneath the axle by straps, and it is unimportant whether the straps are attached to any particular place along the shafts or to a crossbar between the shafts, or whether they are made of one piece or of two or three pieces.

It is assigned as error that the court refused to instruct the jury that:

"No testimony has been introduced in this case to separate the value of patented from the unpatented parts of the cart, or to show what the value of the alleged invention was."

This instruction was properly refused. It would be impossible in the case of a patent such as this to introduce testimony to separate the value of the patented from the unpatented parts. The plaintiffs' invention practically introduced a new cart,—a cart for which a demand at once arose. There is no evidence that at any time carts were constructed after the manner of the plaintiffs', but with the patented feature omitted. There would be no demand for such a cart. It was impossible, therefore, to compare the value of the patented cart with a cart which did not contain the invention. There was in the case the admission of the defendants that they had constructed 150 carts in the year 1893. The testimony of the plaintiffs was that, by reason of the competition of infringers, the price of their cart, which was originally $35, had been reduced to $22.50. The measure of their damages was their entire loss. Fitch v. Bragg, 21 Blatchf. 302, 16 Fed. 243; Manufacturing Co. v. Sargent, 117 U. S. 536, 6 Sup. Ct. 934.

It is assigned as error that the court instructed the jury that it was not material that the strap should be one continuous piece. It is urged that in giving this instruction the court usurped the function of the jury, whose province it was to say whether one thing was the mechanical equivalent of another. It was the duty of the court to define the patented invention as the same was expressed in the language of the claim. 3 Rob. Pat. p. 378. The instruction which is complained of was a portion of the charge upon that subject. The court said:

"It is proper at this point to explain the claim because upon its meaning depends this question of infringement. I do not think it is material whether the strap is fastened directly to the shaft, but it must go under the axle; nor do I think it is material that the strap should be one continuous piece."

There is no reference in these words to a mechanical equivalent of one of the parts of a patented invention. To use a strap composed of two pieces joined together by bolt and screw, instead of a continuous strap, was not to substitute a mechanical equivalent. It was but to change the form of the strap. It was proper for the court to instruct the jury that the plaintiffs' patent secured to them the exclusive right to use in their cart the footboard suspended by a strap substantially as in the claim described, and that to make the strap in two pieces was a mere change in form, which would not relieve the defendants from the charge of infringement. The straps had no function except to support the footboard beneath the axle. It is true that in the claim they are described as "braces or straps"; but in the specification they are nowhere referred to as braces, and nothing is claimed for them as such. It is apparent that they could serve no purpose as braces, or otherwise than as supports to the footboard. But, if we were to concede that the question whether the supports made by the defendants were the equivalents of the plaintiffs' straps was properly one for the jury, there was no error in the instruction which would justify a reversal of the judgment, for the straps used by both the plaintiffs and the defendants were so obviously the same that the court would have been obliged to

have set aside the verdict of the jury had they found otherwise.

It is assigned as error that the court refused to instruct the jury concerning the effect of the defendants' offer to compromise. Upon the trial, one of the defendants, while testifying, volunteered the statement that, after the action was commenced, he had made the plaintiffs an offer of settlement, which was, in substance, that he had offered to pay $250 if they would dismiss the suit, but that the plaintiffs had demanded $350, and that the defendants should agree to pay a royalty upon all carts they should manufacture, and to sell no carts below a certain price; that, in answer to this, he had told the plaintiffs that the defendants would do no more than pay $250, upon the condition that the suit should be dismissed, and that the defendants would continue building the carts. He also said in explanation of the offer:

"That was after the suit was commenced, and before we had employed our present attorneys. Our object in offering the compromise was to get rid of the expense of a suit. We thought we could compromise it for less money than we could continue the suit, but we would not consent to stop manufacturing the vehicles."

The instruction requested by the defendant and refused by the court was the following:

"You are instructed that it is the right and privilege of any person to buy exemption from the expense and annoyance of litigation, and the fact, if it be a fact, that the defendants in this case offered to compromise their differences with plaintiffs, must not be construed to be an admission or recognition by defendants of any right whatever in the plaintiffs."

The proposition made by the defendants was purely and simply an offer of compromise. It was not an admission of any fact involved in the litigation. If evidence of the proposition had been offered by the plaintiffs upon the trial in the court below, it clearly would have been inadmissible, against the defendants' objection; for the law is well settled that the offer of settlement made by a party to a suit with a view to a compromise or an amicable adjustment of the matter in dispute is not admissible against him. 9 Am. & Eng. Enc. Law, 353; Stanford v. Bates, 22 Vt. 546; West v. Smith, 101 U. S. 263; Gerrish v. Sweetser, 4 Pick. 374. But this testimony was not offered by the party to whom the proposition was made. It was volunteered by the defendants themselves. It was not only in the case with their consent, but it remained in evidence without objection upon their part, or motion to strike out. It contained evidence not only of their offer to compromise, but also evidence of a counter proposition from the plaintiffs,—an offer to accept $350 in settlement of damages, which in the complaint were laid at $20,000. The instruction which was asked for, while it was a correct exposition of the law, ignored this feature of the evidence. The plaintiffs were as much entitled to an instruction concerning their offer of settlement as were the defendants to one concerning theirs. The evidence had been offered by the defendants for purposes of their own, presumably for the purpose of showing for how small a sum the plaintiffs had offered to settle. The offer of the plain-

tiffs was calculated to influence the jury's verdict. That of the defendants was not necessarily so. The effect of the instruction which was requested would have been to inform the jury that the defendants' offer of compromise must not be construed as an admission of any right in the plaintiffs. But this was made sufficiently clear in the defendant's testimony. He informed the jury that the proposition was made by him after the commencement of the suit, and before the defendants had employed counsel, and that its object was to obviate the expense of the suit, since it was his belief that the suit could be settled for less than it would cost to employ counsel to defend it. He was careful to say that he coupled his proposition to pay $250 with a declaration of the defendants' intention to continue manufacturing carts, which meant, of course, that they would do so without payment of royalty or becoming subject to further demands from the plaintiffs. The jury could see from the terms of the offer that it involved no recognition of any right in the plaintiffs, but that, on the contrary, it was an express denial of their right. Nothing the court could have said would have made it plainer. We find no error, therefore, in the refusal of the court to charge the jury upon the subject.

The judgment is affirmed, with costs to the defendants in error.