McKENNA, Circuit Judge
(orally). This is a suit for the infringement of a patent for breaking-carts. The patent was issued September 14, 1880, to De Witt C. Putnam. The original application was made May 22, 1880. It was rejected June 2d, in the same *114 year, the patent office holding that a patent to one Jesse Winecoff, October 17, 1871 (No. 119,956), for sulkies, substantially answered the claim. This patent has been introduced in evidence, and consists of a two-wheeled vehicle of the sulky order, somewhat high, with a foot-board depending from its body. The foot-board is so attached to the vehicle that it moves in unison with the seat. The inventor, on this action of the patent office, amended his specification and claim, and it is necessary to compare them with the originals to ascertain what he gave up in order to secure his patent. I will not stop to read the original specifications, but will attach a copy of the file wrapper to the opinion. It will be observed upon inspection of the file wrapper that the remaining amendments made substantial omissions from the original. In the original he illustrated his invention in four ways by four figures, and gave descriptions of these figures. Describing 1 and 2, the applicant said:
“In Figures 1 and 2 I have shown the straps connected with the shafts at the rear end and forward of the whiffletree-bar.”
Describing the result, he said:
“The seat and foot-board have therefore a corresponding vertical motion, the shafts being connected with the springs as described.”
Describing Figs. 3 and 4 of the original specifications, he said:
“Figs. 3 and 4 show modifications of my device. In Fig. 3 the straps F have their forward ends secured on the shaft, and their rear ends with the seat itself, the straps passing in front of the axle instead of to the rear, as shown in Fig. 1. In Fig. 4 I have shown the strap F in a single piece, passing transversely under the foot-board, the two ends being connected with the opposite shafts. In either case the operation is the same, the foot-board being sustained by the springs, the same as the seat is, and independent, as far as its connections are concerned, from the axle of the vehicle. This relieves the rider from the disagreeable jar incident to this class of vehicles where the foot-boards are connected with the axles, as is usually done.”
In the amendment to the specifications, Fig§. 1 and 2 are retained, but Figs. 3 and 4 are omitted, he stating, “I also amend by canceling the drawing on file and substituting the new drawing-filed herewith.” Figs. 3 and 4 illustrate different constructions from Figs. 1 and 2. They illustrate the very constructions that are now contended for. The plaintiff, however, contends that those forms were not given up, and that his right to claim them is established by the decision of the court of appeals in the case of Holmes v. Truman, decided by the circuit court of appeals of this circuit, and. reported in 14 G. G. A. 517, 67 Fed. 542. The case was at law, and was tried before a jury, I presiding at the trial. Among other things, I instructed the jury as follows:
“When a patentee has modified his claim in obedience to the requirements of the patent office, he cannot have for it a more extended construction, which has been rejected by the patent office. A patentee is not at liberty to insist upon a construction of his patent which will include what he was expressly required to abandon and disavow as a condition of the grant. If, therefore, you find from all the evidence that the application for the patent sued upon, as originally filed in the patent office, was rejected upon the ground that said claim was anticipated by the Winecoff patent, defendants’ Exhibit 5, and if *115 you further find that the applicant, D. C. Putnam, acquiesced in the rejection of said claim, and then modified and amended said claim so as to read as it now reads in the patent sued upon, then you are instructed that the plaintiff’s patent must not now be construed to include generally the suspending of the foot-board by means of straps or hangers from the shafts, whereby the seat and foot-board have a common vertical movement, but it must be construed to include only the mode of suspension of the straps F described and claimed in the patent.”
And again:
“I do not think it is material whether the strap is fastened directly to the shaft, but it must go under the axle.”
It is claimed, however, as I have said, that the limitation put upon the claim by these instructions was removed by the court of appeals. The verdict in the case in the circuit court was for the plaintiff, Truman. Holmes took the case to the court of appeals, and assigned as error that the evidence showed that plaintiff’s improvement was without invention, and that the court should have so instructed the jury on defendants’ motion. Passing on the point, Judge Gilbert, speaking for the court, said:
“Upon the writ of error it is contended that the court erred in refusing, at the conclusion of the testimony in the case, to instruct the jury to return a verdict for the defendants in the action, for the reason that it was conclusively shown that the plaintiffs’ improvement was without invention, and that the defendants had not infringed the same. The breaking cart which is the subject of the plaintiffs’ patent is a low-bodied cart, in which the springs are supported directly upon the axle, with the shafts placed directly upon the springs. These shafts support the seat or cart body, and a foot-board, upon which the driver rests his feet, is fastened to and supported by a metal strap on each side, which is attached to the shafts in front of the axle, extends downward at an angle, and is then bent so as to pass back underneath the axle, parallel with the shaft, and is then bent upward, and its rear end is fastened to the shafts behind the axle. By this construction the foot-board moves vertically in unison with the seat and shafts. The advantage of this construction is that the seat is low with reference to the axle, and the driver sits easily and quietly, without deranging motion to the body, since the foot-board and the seat move in unison. With reference to this advantage, the evidence is that there were, before the plaintiffs’ invention, but two classes of two-wheeled vehicles. One was the common butcher’s cart, in which the seat is built high above the shafts, so that the feet of the driver rest on a floor, which is entirely above the springs. It was obviously impossible to construct a low cart in this manner. The other class was one in which the foot-rest was secured upon the axle or the shafts, while the seat was supported upon the springs. In this class of carts the body of the driver would move with the spi-ings, while his feet would remain stationary. The patentee conceived the idea of making a low-seated cart, with the foot-rest supported below the shafts, and the axle between the springs and the seat, so that the axle was placed above the foot-rest, but beneath the springs and the seat. He placed the shafts on the springs, and the seat on the shafts, and supported the footrest underneath the axle by his metal straps. The claim of the patent is as follows: ‘The brace or straps, F, having their ends secured to the shafts before and behind the axle, while the central portion extends beneath the axle, and parallel with the shafts, and is adapted to support the transverse foot-board, E, substantially as and for the purpose herein described.’ It is impossible for the court to say, with reference to the testimony, that the jury should have been instructed that there was no invention in the plaintiffs’ cart. The record shows that the cart was novel in construction, that it was useful, and that it went into immediate and general use. Counsel for the plaintiffs in error contend that there was nothing novel in the idea of suspending a foot-board in such a way that its vertical movement would be com *116 mon to that of the seat, and that a particular and specific improvement in the means of suspension was all that the patentee could claim; and they argue that the iron strap of the patent as a device for holding the foot-hoard was not an invention, that the idea of such a strap was old, and that it was well known that two such straps, when hung parallel, would sustain anything laid across them. This view of the patent leaves entirely out of sight the essence of the plaintiffs' invention, which is not merely the fact that the foot-board was hung beneath the shafts by iron braces, but that a cart was constructed with the seat directly above the springs and axle, thereby securing a low seat, with its advantages in connection with a breaking-cart, and a foot-rest which should move in unison with the same. In other words, it was the arrangement of the foot-board with reference to the other parts which was new.”
The italics are mine, and I use them because on that portion of the opinion complainant relies for his contention. It is manifest that we may not determine the court’s opinion from any particular passage. The whole opinion must be considered, and the question which was passed on. The only question involved was whether the construction of the strap, or its manner of fastening to the shafts, was essential. I held at the trial that it was not, but that the strap must go under the axle, and the court of appeals say:
“But it is a fair interpretation of plaintiffs’ patent to say that they are protected in the use of a cart in which the shafts are placed directly upon the springs, and the foot-board is sustained beneath the axle by straps; and it is unimportant whether the straps are attached to any particular place along the shafts or to a cross-bar between the shafts, or whether they are made of one piece or of two or three pieces.”
This language defines exactly the invention,—disposes of clearly the unimportant variations from it which were claimed as essential. Counsel for complainant, however, contends that the phrase, “and the foot-board is sustained beneath the axle by straps,” means lower than,—nearer to the ground; securing a low cart. But this would certainly not be the ordinary meaning of the word, and may be absolutely an incorrect use of the word “beneath,” and cannot be attributed to the learned judge who delivered the opinion of the court. “Beneath,” as a preposition, means “lower in place, with something directly over or under.” Webst. Diet. It follows, therefore, that the construction of the patent confines it to a cart with straps beneath the axle, and that the carts of the respondent, not being of that construction, do not infringe.
It is complained by complainant’s counsel that this construction takes from complainant a part of his invention. Without disputing this, it may be said that it cannot be helped. This is often the result of a defective or insufficient claim. This hardly needs illustration. If so, it will be found in Cramer v. Fry, 68 Fed. 201, and cases there cited. In one of these it was said by Mr. Justice Bradley:
“When a claim is so explicit, the courts cannot alter or enlarge it. If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent and an application for a reissue. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the patent office or the appellate tribunal to which contested applications are referred. When the terms of a claim in .a patent are clear and distinct (as they should always be), the patentee, in a suit brought upon the patent, is bound by it. He can claim nothing beyond it.”
*117 The bill will therefore be dismissed.
I think the same ruling will be applied to the case of Truman v. Holmes.
Mr. Boone: Did you honor take into consideration the fact that the testimony shows that they also did make other carts where it did pass under the axle? There is testimony to that effect.
The Court: It is new to me if there is.
Mr. Hougues: There is no testimony to that effect.
Mr. Boone: There is one branch of the case where there is testimony to show they had made carts so.
The Court: I did not so understand it. Look it up, and let me see it. I will reserve my opinion until I see what effect that has.
NOTE. On February 25, 1897, the decrees ordered in the foregoing opinion to be entered were set aside by order as follows:
“McKENNA, Circuit Judge. The decrees in these cases axe set aside, because, in addition to the points decided, there are other points in the brief, which, by inadvertence, did not receive the deliberate consideration and judgment of the court.”
The orders of submission in both cases were then vacated, and the cases restored to the calendar. On March 26, 1897, both eases were reargued before MORROW, District Judge, and the bill in each case was ordered dismissed.