### TRUMAN v. HOLMES et al.

(Circuit Court of Appeals, Ninth Circuit. February 21, 1898.)

#### No. 376.

PATENTS—EFFECT OF WITHDRAWAL OF ORIGINAL SPECIFICATIONS.

In Putnam's patent, No. 232,207, for breaking-carts, the effect of the withdrawal of the original specifications after the application was rejected is to limit his patent to the specific invention described in his amended specifications, to wit, the construction of carts where the central portion of the straps extends "beneath the axle." 80 Fed. 109, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of California.

John L. Boone, for appellant.

M. A. Dorn, D. S. Dorn, and Chas. E. Nouges, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is a suit in equity for the infringement of letters patent No. 232,207, granted to De Witt C. Putnam on September 14, 1880, for breaking-carts. Appellant claims that the right, title, and interest in said invention and letters patent have been assigned to him in the territory named, and that by virtue thereof he is entitled to sue for and recover all damages and claims for past infringements. He prays for an injunction, and for such other and further relief as in equity he may be entitled to. It appears from the record that on July 16, 1886, Putnam sold and assigned to Truman, Isham, and Hooker all his right, title, and interest in and to the patent for the territory "known and described as 'San Francisco County, State of California,' and no other place or places"; that on February 28, 1893, Truman, Isham, and Hooker assigned said patent to Truman, Hooker & Co., including "all past damages for infringements, royalties, or profits"; that on March 30, 1893, Truman, Hooker & Co., as plaintiffs, commenced an action at law in the circuit court of the United States for the Northern district of California against Henry E. Holmes and M. P. Holmes, doing business under the firm name of H. E. Holmes & Co. (appellees herein), to recover the sum of $20,000, as damages for alleged infringements of the patent; that the trial of that suit resulted in a verdict in favor of the plaintiffs therein in the sum of $150 and costs; that a writ of error was thereafter duly taken from said judgment to the circuit court of appeals, and was there affirmed (Holmes v. Truman, 14 C. C. A. 517, 67 Fed. 542); that on May 28, 1895, Truman, Hooker & Co. assigned said patent to I. J. Truman (appellant herein), together with "all claims and demands against past infringements." This suit was commenced on March 10, 1896. The circuit court (Judge McKenna presiding) dismissed the bill upon the ground that the construction of the patent confines it to a cart with straps beneath the axle, and that the respondents' carts, not being of that construction, do not infringe. But he afterwards set the decree aside "because, in addition to the points decided, there are other points in the brief, which, by inadvertence, did not receive the deliberate consideration and judgment of the court." The order of submission was therefore vacated, and the case came up regularly before Judge Morrow, and a decree was entered dismissing the bill. This appeal is from the last decree.

It is argued by appellees that the order of the circuit court dismissing the bill should be sustained upon various grounds, and a dozen or more reasons are given, each of which is claimed to be a complete defense to this suit. It is insisted, among other things, that the only object of bringing this suit is for the purpose of obtaining an accounting for the past infringements which were involved in the case at law, previously heard, determined, and settled. If this be true, it necessarily follows that this suit was properly dismissed. Section 723 of the Revised Statutes of the United States provides that

"suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." A court of equity takes cognizance of a suit for the infringement of a patent when the complainant is entitled to relief by injunction; but, in order to sustain a suit of this character, it must affirmatively appear that some ground of equitable jurisdiction exists, or that the complainant has no plain, speedy, or adequate remedy at law. Equity will not entertain a suit which simply involves the ascertainment of damages and profits for past infringements. Root v. Railway Co., 105 U. S. 189, 215; Hayward v. Andrews, 106 U. S. 672, 1 Sup. Ct. 544; Clark v. Wooster, 119 U. S. 325, 7 Sup. Ct. 217; 3 Rob. Pat. § 1086; Walk. Pat. § 572. Appellant, however, contends that the evidence shows that appellees had been engaged in the manufacture of carts of the same general construction since the judgment was rendered in the action at law, as before, and that, this court in that case having held that they were guilty of infringing appellant's patent, the decree dismissing the bill in this case is erroneous. In Holmes v. Truman, 14 C. C. A. 517, 67 Fed. 542, the direct question here involved was not presented. In that case the defendants admitted that they constructed a cart differing from that of the plaintiffs only in the fact that the forward ends of the straps, instead of being attached directly to the shafts, are attached to a crosspiece which connects the two shafts in front of the seat, and that, instead of being continuous straps, they were formed of two pieces fastened together by nut and screw at the angle underneath and behind the axle. It was upon these facts that the contention was there made that the plaintiffs must be held to the specific construction described in their letters patent, and it was in reply to this contention that the court said:

"We do not so construe the patent. The crossbar between the shafts is substantially a part of the shafts. It makes no difference, so far as the function of the straps is concerned, whether they are attached to the shafts, or attached to a crossbar which connects the shafts; and it makes no difference whether the straps are one continuous piece, or composed of two. It is true that the plaintiffs' patent does not cover any arrangement by which the seat and the footboard may be made to move in unison. Those results were obtained in the butcher's cart. But it is a fair interpretation of the plaintiffs' patent to say that they are protected in the use of a cart in which the shafts are placed directly upon the springs, and the footboard is sustained beneath the axle by straps; and it is unimportant whether the straps are attached to any particular place along the shafts, or to a crossbar between the shafts, or whether they are made of one piece, or of two or three pieces."

The only testimony cited by the appellant in support of his contention that the facts in this case are substantially the same is that of M. P. Holmes, in reply to certain questions propounded to him by appellants' counsel, as follows:

"Q. Have you since 1894 manufactured any carts having straps that supported the footboard? A. Yes, sir; a strap that supports the footboard. It must have something to support it. Q. What was the front end of such straps attached to? A. To a crossbar that is connected with the shaft. Q. What was the rear end of the strap attached to? A. Some of them came back here to the rear. The footboard came up in front of the axle, and they were attached to the seat. Those carts that had a rack behind were made in that way. They did not extend back of the seat or axle at all. Others

we have made for the purpose of putting a footboard on them. We have put two rods from the shaft down through a short piece of iron that holds that footboard on that rack. We made them in that way."

When this witness answered, with reference to the straps, that "some of them came back here to the rear," it is evident that he was illustrating his evidence by pointing out, upon a model, drawing, or exhibit, some point in front of the axle, because in the same answer he says, "They did not extend back of the seat or axle at all." This is made clear by a reference to his entire testimony relating to the kind of carts manufactured by him after the decision of this court in the action at law, and is plainly shown by his answer to a question asked him upon cross-examination, as follows:

"Q. Have you ever manufactured, sold, or used any carts in which the braces or straps have their ends secured to shafts before and behind the axle, while the central portion extended beneath the axle, and parallel with the shaft, and is adapted to support the transverse footboard? A. No, sir."

In Truman v. Implement Co., 87 Fed. 1006, which is in all essential particulars similar to this, and is treated in the briefs of counsel as a "companion case," because it involves substantially the same principles, appellant's counsel has made drawings which clearly illustrate the difference in the construction of the carts, after the former suit, from the carts which were held to be an infringement of the appellant's patent in the former suit. These drawings are as follows:

Cart Made and Sold by Respondent.

Cart Adjudged by This Court, in Truman et al. v. Holmes et al., to be an Infringement.

The case, upon its merits, depends upon the question whether a cart constructed without the straps passing beneath the axle consti-

tutes an infringement of the patent. This must be answered by a construction of the language used in the claim of the patent. The original claim of Putnam, as first presented to the patent office, reads as follows:

"The improvement in breaking-carts, consisting in suspending the footboard, E, by means of straps or hangers, F, from the shafts, seat, or that portion of the vehicle connected with the springs alone, whereby the seat and footboard having a common vertical movement, substantially as and for the purpose herein described."

This claim was rejected upon the ground that "the patent of Jesse Winecoff, Oct. 17, 1871, No. 119,956 (sulkies), substantially answers the claim." The applicant thereupon amended "by erasing the entire specification, and substituting" a new one. Figs. 1 and 2, referred to in the amended specification, are as follows:

Fig. 1.

Fig. 2.

The amended specifications and claim read as follows:

"My invention relates to certain improvements in that class of vehicles known as 'breaking-carts,' in which young colts are broken to harness. Carts of this description are usually provided with very long shafts, and the seat is placed on springs immediately over the axle, or at such a distance back that the driver is not in danger of being kicked by a fractious animal. In this class of vehicles the footboard is usually secured to the axle, while the seat is on springs; and it is therefore uncomfortable to ride upon, since, while the body of the occupant may move up and down, his feet must remain stationary. My improvements consist in so attaching the footboard to the vehicle that it shall move in unison with the seat; the same spring which supports the seat serving as a spring for the footboard, as is more fully described in the accompanying drawings, in which Fig. 1 is a longitudinal section of my device; Fig. 2 is a bottom view. Breaking-carts usually have two wheels, A, only, and the springs, B, are secured both to the axle, C, and

the shafts, D; said shafts being secured on the springs in the manner shown. In order to attach the footboard, E, to the vehicle, I place metallic straps or bands, F, in a proper position to hold the footboard; connecting these straps with the shafts and seat, and not with the axle. I have shown the straps connected with the shafts at the rear ends of, and forward of, the whiffletree bar. It will be seen, by this construction, that the rear ends of the shafts and the seat are supported upon the springs, B, while the straps, F, pass beneath the axle, and are bent up so that their rear and their front ends are secured to the shafts at points behind and in front of the axle, while the central portion does not touch it at all. The footboard, E, with its turned-up front portion, is then secured upon the bottom and front portions of the straps, F. Being thus entirely independent of any direct connection with the axle, it will have the same movement imparted to it by the action of the spring that the shafts have, and it will have none of the unpleasant jar that a stationary footboard, or one supported from the axle, will have, while the arrangement of the straps parallel with the shafts facilitates the attachment of the transverse footboard, and makes a strong construction. Having thus described my invention, what I claim as new, and desire to secure by letters patent, is the braces or straps, F, having their ends secured to the shafts before and behind the axle, while the central portion extends beneath the axle, and parallel with the shafts, and is adapted to support the transverse footboard, E, substantially as and for the purpose herein described."

We are of opinion that the effect of the withdrawal of his original specifications and claim was to limit his patent to the specific invention as described in the claim of his amended specifications, to wit, to the construction of carts where the central portion of the straps "extends beneath the axle." The contention of the appellant that he should not be restricted, in the construction of the carts, to braces or straps which extend beneath the axle, as described in his amended claim, is fully met and answered by the decisions of the supreme court of the United States. In Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, the court said:

"This court has often held that when a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it. Leggett v. Avery, 101 U. S. 256; Vulcanite Co. v. Davis, 102 U. S. 222, 228; Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236; Mahn v. Harwood, 112 U. S. 354, 359, 5 Sup. Ct. 174, and 6 Sup. Ct. 451; Union Metallic Cartridge Co. v. United States Cartridge Co., 112 U. S. 624, 644, 5 Sup. Ct. 475; Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021; Shepard v. Carrigan, 116 U. S. 593, 597, 6 Sup. Ct. 493; White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72; Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376; Bragg v. Fitch, 121 U. S. 478, 7 Sup. Ct. 978; Snow v. Railway Co., 121 U. S. 617, 7 Sup. Ct. 1343; Crawford v. Heysinger, 123 U. S. 589, 606, 607, 8 Sup. Ct. 399."

In Morgan Envelope Co. v. Albany Perforated Wrapping-Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 629, the court said:

"It is insisted in this connection, however, that, under the words 'substantially as described,' the patentee is entitled to claim a band of oval or oblong shape, and that, looking at his specification and drawing in connection with the claim, it is obvious that the latter should be so limited. But the patentee having once presented his claim in that form, and the patent office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto. Leggett v. Avery, 101 U. S. 256; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493; Crawford v. Heysinger, 123 U. S. 589, 606, 8 Sup. Ct.

399; **Union Metallic Cartridge Co. v. United States Cartridge Co.**, 112 U. S. 624, 5 Sup. Ct. 475."

The views herein expressed are conclusive of this case, and render it unnecessary to examine any of the other questions elaborately argued by counsel. The judgment of the circuit court is affirmed, with costs.