## TRUMAN v. CARVILL MFG. CO.

(Circuit Court, N. D. California. March 28, 1898.)

### No. 12,093.

1. RES JUDICATA—JUDGMENTS IN PATENT CASES.
   A judgment sustaining the validity of a patent does not operate as res judicata in a suit on the same patent against a different defendant.

2. PATENT INFRINGEMENT SUITS—EFFECT OF PRIOR ADJUDICATIONS.
   A judgment sustaining the validity of a patent is not conclusive in a subsequent suit against a different defendant in respect to a defense as to which substantially new evidence is produced, and the court will exercise an independent judgment in regard thereto.

3. SAME—PRIOR PUBLICATIONS.
   Trade magazines, published and copyrighted, in general circulation, and found in public free libraries as well as scientific libraries, are publications, in the sense of the patent law.

4. SAME—BREAKING-CARTS.
   The Putnam patent, No. 232,207, for improvements in breaking-carts, consisting in so attaching the footboard to the vehicle that it shall move in unison with the seat, is void because of anticipation, and for want of novelty.

This was a bill in equity for infringement of letters patent No. 232,207, issued to De Witt C. Putnam on September 14, 1880, for improvements in breaking-carts.

John L. Boone, for complainant.
E. J. Mize, for defendant.

MORROW, Circuit Judge. This is a suit in equity for the infringement of letters patent No. 232,207, granted to De Witt C. Putnam on September 14, 1880, for improvements in breaking-carts. The complainant is the assignee, by a regular chain of assignments, of all the right, title, and interest in said invention and letters patent for the territory known and described as "San Francisco county, state of California, and no other place or places." The patent has been in litigation heretofore in this court, and, on appeal, in the circuit court of appeals. Truman v. Holmes, 14 C. C. A. 517, 67 Fed. 542; Id., 80 Fed. 109; s. c. (on appeal) 87 Fed. 742. In Truman v. Holmes, 14 C. C. A. 517, 67 Fed. 542, which was an action at law, the validity of the patent was sustained on a writ of error to this court from the circuit court of appeals; and the judgment of the lower court, in favor of the complainant, in the sum of $150, as damages for infringement, was affirmed. In Truman v. Holmes and Truman v. Implement Co.,—both being "companion cases," and suits

in equity brought in this court for infringement of the same patent, —the bills were dismissed, and the defendants held not to have infringed. 80 Fed. 109, affirmed on appeal 87 Fed. 742. Different constructions of the carts were involved in the action at law and the suits in equity, as will be seen from the opinions above referred to. The original claim of De Witt C. Putnam, as first presented to the patent office, read as follows:

"The improvement in breaking-carts, consisting in suspending the footboard, E, by means of straps or hangers, F, from the shafts, seat, or that portion of the vehicle connected with the springs alone, whereby the seat and footboard have a common vertical movement, substantially as and for the purpose herein described."

This claim was rejected on the ground that "the patent of Jesse Winecoff, October 17, 1871, No. 119,956 (sulkies), substantially answers the claim." The applicant thereupon amended "by erasing the entire specification, and substituting" a new one. The figures of the patent, as they are shown in the amended specifications and claim, will be found represented in 80 Fed. 112. The amended specifications and claim read as follows:

"My invention relates to certain improvements in that class of vehicles known as 'breaking-carts,' in which young colts are broken to harness. Carts of this description are usually provided with very long shafts, and the seat is placed on springs immediately over the axle, or at such a distance back that the driver is not in danger of being kicked by a fractious animal. In this class of vehicles the footboard is usually secured to the axle, while the seat is on springs; and it is therefore uncomfortable to ride upon, since, while the body of the occupant may move up and down, his feet must remain stationary. My improvements consist in so attaching the footboard to the vehicle that it shall move in unison with the seat; the same spring which supports the seat serving as a spring for the footboard, as is more fully described in the accompanying drawings, in which Fig. 1 is a longitudinal section of my device; Fig. 2 is a bottom view. Breaking-carts usually have two wheels, A, only, and the springs, B, are secured both to the axle, C, and the shafts, D; said shafts being secured on the springs in the manner shown. In order to attach the footboard, E, to the vehicle, I place metallic straps or bands, F, in a proper position to hold the footboard; connecting these straps with the shafts and seat, and not with the axle. I have shown the straps connected with the shafts at the rear ends of, and forward of, the whiffletree bar. It will be seen by this construction that the rear ends of the shafts and the seat are supported upon the spring, B, while the straps, F, pass beneath the axle, and are bent up so that their rear and their front ends are secured to the shafts at points behind and in front of the axle, while the central portion does not touch it at all. The footboard, E, with its turned-up front portion, is then secured upon the botton and front portions of the straps, F. Being thus entirely independent of any direct connection with the axle, it will have the same movement imparted to it by the action of the spring that the shafts have, and it will have none of the unpleasant jar that a stationary footboard, or one supported from the axle, will have; while the arrangement of the straps parallel with the shafts facilitates the attachment of the transverse footboard, and makes a strong construction. Having thus described my invention, what I claim as new, and desire to secure by letters patent, is the braces or straps, F, having their ends secured to the shafts before and behind the axle, while the central portion extends beneath the axle, and parallel with the shafts, and is adapted to support the transverse footboard, E, substantially as and for the purpose herein described."

With reference to the interpretation that should be placed on this amended specification and claim, the circuit court of appeals, per

Hawley, District Judge, delivering the opinion of the court in Truman v. Holmes, 87 Fed. 742, held that:

"The effect of the withdrawal of his original specifications and claim was to limit his patent to the specific invention as described in the claim of his amended specifications, to wit, to the construction of carts where the central portion of the straps 'extended beneath the axle';" citing Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, and Morgan Envelope Co. v. Albany Perforated Wrapping-Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, and the cases therein collated.

At the outset, the defendant filed a plea, which was subsequently amended, in which it is averred, substantially, that the complainant was at all times from the 18th day of January, 1888, to the 31st day of January, 1894, one of the co-partners comprising the firm of Truman, Hooker & Co.; that the complainant on or about the 28th day of June, 1893, as such member of said firm, induced the defendant to accept an order from the said firm of Truman, Hooker & Co. for the manufacture for said firm of large quantities of carts, including 125 or thereabouts, containing and embodying said invention described in the patent numbered 232,207; that the defendant did thereupon manufacture said quantities of said carts so ordered by said firm, of the kind and in the manner and at the times agreed upon by said parties to said order; that defendant offered to deliver, according to the terms of said order, all of said carts so ordered, to said Truman, Hooker & Co., but that said firm neglected and refused to receive the same, or any part thereof, except about two-fifths of the number so ordered; that the defendant has since said refusal sold most of the remaining number of said carts so ordered by said Truman, Hooker & Co., including about 75 carts containing said invention, within the territory alleged to be owned by the complainant; that the defendant has never at any time manufactured for sale nor for use, nor sold nor used, within said territory, nor threatened to sell nor offered for sale within said territory, any other or greater number of carts embodying said invention than the number so ordered as aforesaid; that the material put into said carts by the defendant was and is of greater value than the complainant's patent therein, etc. As it was claimed in the amended plea that the carts had been made under a contract to manufacture them by Truman, Hooker & Co., of which firm the complainant was a member at that time, it was contended that there was no infringement by the defendant in selling that number of the carts which had been refused by Truman, Hooker & Co. The plea as amended was, however, overruled; and the defendant duly filed its answer, denying infringement, and setting up want of novelty, prior use, and publication. Testimony has been taken, and the case now comes up for final consideration.

The fact that the carts made and sold by the defendant are like the carts for which the letters patent involved in this case were issued, is placed beyond controversy, not alone by the admission in the plea, but more particularly by the testimony of O. S. Carvill, the superintendent of the defendant company. He testified as follows:

"Q. (By counsel for complainant): Can you state whether or not the Carvill Manufacturing Company has since the year 1880 made or sold any

carts in which the springs were mounted directly upon the axle, the shafts secured upon the springs, the seat secured directly upon the shafts over the springs, and in which the footboard was supported by a strap attached or connected to the shafts in front of the axle, and passed down underneath the axle? A. Yes, sir."

To establish the validity of the patent, the complainant relies, for the most part, upon the decision of the circuit court of appeals for this circuit, affirming the judgment of this court in the case of Truman v. Holmes, 14 C. C. A. 517, 67 Fed. 542, and contends that it is res judicata, and concludes the defendant from denying the validity of the patent. Besides setting forth, by appropriate averments in the bill, the fact that the patent has been sustained in the case relied on, the judgment roll was also introduced in evidence. The case was an action at law to recover $20,000 for infringement of the identical patent sued on in this case. It was tried before a jury, who returned a verdict for the plaintiff (complainant in this suit) in the sum of $150. A writ of error was thereupon sued out from the circuit court of appeals, which affirmed the judgment of the court below. However conclusive the decision of the circuit court of appeals as to the validity of the patent in this case may be, still it is difficult to see how it can be deemed res judicata in the case at bar. True, it involves the same patent, and the complainant in the two cases is the same. But the parties defendant are entirely different. This difference, obviously, is fatal to the application of the doctrine of res judicata. The general rule, to make a matter res judicata, is that there must be a concurrence of four conditions: (1) Identity of the subject-matter involved; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of the quality of the persons for or against whom the claim is made. 21 Am. & Eng. Enc. Law, 227, and cases there cited; Packet Co. v. Sickles, 5 Wall. 580; Cromwell v. County of Sac, 94 U. S. 351. One of the conditions is lacking in this case, and the judgment of this court and of the court of appeals in the case referred to cannot be deemed binding on the defendant in this case. It is true that, in suits where a preliminary injunction is asked for, the fact that the same patent has been sustained in other cases will often justify the court in granting the preliminary injunction. Wells v. Gill, 2 O. G. 590, 6 Fish. Pat. Cas. 89, Fed. Cas. No. 17,394; Purifier Co. v. Christian, 4 Dill. 448, Fed. Cas. No. 307; Lockwood v. Faber, 27 Fed. 63; New York Filter Mfg. Co. v. Niagara Falls Waterworks Co., 26 C. C. A. 252, 80 Fed. 924; Bowers Dredging Co. v. New York Dredging Co., 80 Fed. 119; Bowers v. Reclamation Co., 81 Fed. 569. But no question of the propriety of granting a preliminary injunction arises now. The case is to be disposed of on its merits. So far as appears, this is the first time that this particular defendant has had his day in court. It furthermore appears affirmatively that some additional testimony has been introduced to that presented in the action at law relied on as res judicata. To what extent the evidence in the two cases differs on all the issues presented, does not clearly appear; but it was at least established in the case at bar that the witness A. D. Carvill, the president of the defendant company, who was also a witness in the action at law, was not examined with reference to the two publications introduced in the case at bar,

and that this was the first time these publications, in support of the defense of prior publication, had been so introduced. While the case of Truman v. Holmes may be considered as conclusive authority to establish the validity of the patent, so far as the defense of prior use, or other defense presented in that case, may be concerned, still it is obvious that it is not conclusive in this case, where a different defendant is involved, upon the defense of prior publication; it appearing affirmatively that other and additional evidence has been introduced in the case at bar to support that defense, which was not before the court in Truman v. Holmes. The following authorities—without entering into a discussion of them—will be found to support the views I have taken of the effect of the judgment in the case of Truman v. Holmes, supra, as applied to the case at bar: Russell v. Place, 94 U. S. 606; Potter v. Whitney, 1 Low. 87, Fed. Cas. No. 11,341; Page v. Telegraph Co., 2 Fed. 330; Day v. Rubber Co., Id. 570; Wilson v. Coon, 6 Fed. 611; Consolidated Safety-Valve Co. v. Ashton Valve Co., 26 Fed. 319; Lockwood v. Faber, 27 Fed. 63; Machine Co. v. Hedden, 29 Fed. 147; Cary v. Manufacturing Co., 31 Fed. 344; Miller v. Tobacco Co., 7 Fed. 91; Norton v. Wheaton, 57 Fed. 929; Southern Pac. Co. v. Earl, 27 C. C. A. 185, 82 Fed. 690; 3 Rob. Pat. § 1175 et seq.; 21 Am. & Eng. Enc. Law, 128, 227. The court therefore feels compelled to consider the case upon its merits, and to pass its own independent judgment upon the defense now presented, as to which additional evidence has been introduced; that is, whether the Putnam patent, No. 232,207, has been anticipated by prior publication.

The complainant, called on his own behalf, testified, substantially, that his name was I. J. Truman; his residence, San Francisco; his age, 55 years; and his occupation at that time that of a banker; that he has resided in California since January, 1861; that his business has been the agricultural implement business,—wagons, carts, buggies, etc. He testified further that he had had considerable experience as a manufacturer of agricultural implements; that his experience in the business made him familiar with the state of the art, or, in other words, the kind and character of carts that were in use prior to 1880; that the carts that were made previous to that time were what are called "butcher carts"; that two-wheeled carts, called "sulkies," had also been long in use prior to 1880; that the seat and footboard of sulkies, prior to 1880, were placed back, and the feet rested on the shafts, so that they were about level with the seat; that these sulkies were unhandy to ride in, and were not salable, except for racing; that subsequent to 1880 the cart trade was entirely changed, through the invention of Putnam, as contained in the patent involved in this case; that the feature or features of that cart which made it desirable, and tended to create a change in the manufacture and use of carts, were that the feet were placed in a comfortable position in relation to the seat, and that the body and the feet would move in unison up and down. On cross-examination he admitted that he was not a mechanic in the line of making agricultural implements or carts; that he had never made any himself. Being shown a picture or cut of a cart called a "Newport cart" (as

the same appears on plate 31 of volume 5 of the New York Coach-Makers' Magazine, and particularly the January, 1864, number thereof, which refers to page 120 of the same volume), he admitted that the picture of the cart looked as though it had a footboard extending below the axle; that perhaps the hole that is marked on the cut or picture is meant for the axle to work up and down inside the body of the cart; that a mechanic of ordinary ability in the line of cart making would, by copying from the draft of the picture on plate 31 of the publication referred to, put the seat above the shafts, and the footboard below the axle. With the testimony of this witness, and the introduction of copies of the assignments, to trace the chain of assignments to the complainant, also of the judgment roll in Truman v. Holmes, and the admission of the witness O. S. Carvill, the superintendent, that the defendant corporation had manufactured carts covered by complainant's patent, the complainant rested his case. The defendant introduced evidence of the following character in support of the defense of prior publication. Two volumes (2 and 5) of a publication designated as the "New York Coach-Makers' Magazine," and a number (January, 1874) of another publication called "The Hub," were introduced in evidence. These were offered for the purpose of showing, by a reference to certain cuts of carts, and descriptions thereof accompanying these cuts, that carts containing substantially the essential characteristics of the carts covered by the Putnam patent of 1880 were known and used long before that time. Volume 2 of the New York Coach-Makers' Magazine covers a period from June, 1859, to May, 1860. The January, 1860, number, at page 155 of the volume, contains a reference to the "Osier cab." This cab, which is really a cart, is illustrated on plate 28, at the end of the same volume. Volume 5 of the same publication covers a period from January, 1863, to May, 1864. The January, 1864, number, at page 120 of the volume, contains a reference to the "Newport cart." This cart is illustrated on plate 31 of the same volume. On page 137 of the same volume is a reference to a "caned gocart," illustrated on plate 34 of the same publication. The January, 1874, number of the Hub, at pages 326, 327, contains descriptions of various dog carts, and on page 327 is a picture of what is termed a "cottage gig." It is contended that these magazines are not publications, in the sense intended by the patent law. But it is difficult to point out any particular wherein they are lacking in that respect. It appears that they were published, and that they were copyrighted. That they were in general circulation is fully established by the testimony. Two witnesses, both assistant librarians of the Free Public Library, and the Library of the Mechanics' Institute of San Francisco, respectively, testified to the fact that these publications (the New York Coach-Makers' Magazine, in the Free Public Library, and the Hub, in the Mechanics' Institute) had been in their respective libraries for many years, and that they were accessible to the public. It further appears affirmatively from the testimony of David Kerr, a practical carriage maker, that both publications had not only been published, but that they had a general circulation among carriage makers. The witness testified that he first heard of the New York Coach-Makers'

Magazine about 30 years ago; that he was himself a subscriber to both publications, having taken the Hub for 12 years past. It therefore appears beyond contradiction that the two publications introduced in this case have been in general circulation many years before the Putnam patent was issued, in 1880. It further appears, from the testimony of at least three competent and experienced carriage makers, that a competent mechanic, experienced in the trade of constructing carts, and possessed of the ordinary mechanical skill peculiar to such trade, could, without any other guidance than the pictures, with the descriptions thereof contained in the two publications introduced in evidence, and without requiring any inventive faculty, have constructed a one-horse, two-wheeled cart, with elliptic springs resting directly upon the axle, and the shafts resting directly upon the springs, with the seat resting upon the shafts, and the footboard supported beneath the shafts, nearly in line with the axle, by means of a strap running under the footboard from the shafts, in front and back, and attached to the shafts. This evidence went entirely uncontradicted. Robinson, in his work on Patents (section 325), gives the following conditions upon which a prior publication, to be effective in defeating the validity of a patent, depends. He says:

"The publication must be (1) a work of public character, intended for general use; (2) within reach of the public; (3) published before the date of the later invention; (4) a description of the same complete and operative art or instrument; and (5) so precise and so particular that any person skilled in the art to which the invention belongs can construct and operate it without experiments, and without further exercise of inventive skill. Unless a publication possesses all of these characteristics, it does not place the invention in the possession of the public, nor defeat the claim of its reinventor to a patent."

See, also, the following cases: Seymour v. Osborne, 11 Wall. 516; Cohn v. Corset Co., 93 U. S. 366, 370; Downton v. Milling Co., 108 U. S. 466, 471, 3 Sup. Ct. 10; Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073. The two magazines introduced in evidence, and the evidence in support thereof, would seem to satisfy the most exacting test of what are prior publications, within the meaning of the patent law, to defeat the right of a subsequent inventor. It does not appear that any such showing was made in the action at law of Truman v. Holmes, supra, claimed to be res judicata. At least, it affirmatively appears that the two publications upon which the prior publication is based in this case were not introduced in the case of Truman v. Holmes. I am compelled, therefore, from the evidence introduced in this case, to hold that the cart covered by the patent issued to Putnam in 1880 had been, to all intents and purposes, anticipated, and is void for want of novelty; that carts of the same, or substantially similar, construction, embodying the same idea, had been described in publications in general circulation among carriage makers long prior to the issuance of the patent to Putnam; and that a mechanic possessed of ordinary mechanical skill could have constructed carts from the descriptions contained in the publications introduced in evidence, which, in their essential characteristics, would have been like the carts covered by the Putnam patent. With reference to the question of prior use, A. D. Carvill, the president of the

Carvill Manufacturing Company, testified that he himself had made carts possessing all the essential characteristics of the Putnam cart prior to 1877; that he made such carts at Lewiston, Me., where they were at that time in general use. This testimony was, in effect, contradicted by that given by the complainant, who testified that there were only two kinds of carts in use prior to 1880,—a "butcher cart," and sulkies,—and that the invention of Putnam in 1880 had effected a great change in the manufacture, use, and sale of carts. As the witness A. D. Carvill testified also in the case of Truman v. Holmes, on behalf of the defendant in that case, as to the prior use, manufacture, and sale of carts similar to the carts covered by the Putnam patent, and the verdict of the jury was in favor of the complainant, that case may be considered as conclusive on this court in the present case upon the question of prior use; no other or additional evidence appearing to have been introduced in this case. But, as previously stated, giving the case of Truman v. Holmes, 14 C. C. A. 517, 67 Fed. 542, all the persuasive authority which that decision may be entitled to upon the question of prior use, or any other defense to the validity of the patent presented in that case, it does not, in my opinion, in view of the additional and uncontradicted evidence given in the case at bar, conclude this court in this case upon the question of prior publication; and I therefore hold that the Putnam patent, No. 232,207, issued in 1880, is void for want of novelty, it having been anticipated, as shown by the prior publications proven in this case. The bill will therefore be dismissed, with costs to the defendant, and it is so ordered.