### PATTON et al. v. CLEGG et al.

(District Court, E. D. Pennsylvania. June 28, 1921.)

#### No. 1971.

1. Patents ☞287, 302—Agent, who sold infringing article, chargeable as infringer.

One who sold an infringing article is chargeable with infringement, and may be enjoined, though he made the sale, not for himself, but as agent for another.

2. Patents ☞328—1,301,596, for paper lining for finger bowls, held valid and infringed.

The Patton patent, No. 1,301,596, for a paper lining for finger bowls, *held* valid on the presumption arising from the grant, and also infringed.

In Equity. Suit by John G. Patton and Harry P. Sayford, trading as the Sayford Paper Specialty Company, against E. T. Clegg and the Vendig Hotel Company. Decree for complainants.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for plaintiffs.

Synnestvedt & Lechner, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. [1] This cause concerns itself with letters patent No. 1,301,596, issued April 22, 1919, to John G. Patton, for a paper lining for finger bowls. The title is in the plaintiffs by ownership of the patent in one and an exclusive license in the other. At the close of the plaintiffs' case in chief there was a motion to dismiss as against the defendant Clegg on the ground of the absence of any evidence that he had made, used, or vended the patented utensil. If this motion prevails, the Hotel Vendig is left as the sole defendant. This calls for a word of explanation.

The bill was originally filed against the Milwaukee Lace Paper Company, which was averred to have infringed the patent by manufacturing and selling these paper linings. The defendant could not be found in the district. The bill was served upon Clegg, on the theory that he was the agent and occupied the office of the Milwaukee Company. The marshal, however, declined to return these latter facts. This was because Clegg, although he had been the agent of the company,

was at the time of service no longer its agent, nor did the company then maintain an office within this district. The return of service was in consequence a service upon Clegg as an individual, and it was held that there had been no valid service upon the company. The bill was then amended by adding Clegg and the Hotel Vendig Company as defendants; both being charged with infringement—Clegg with vending, and the Hotel Company with using, the patented linings. The proofs warrant the finding that Clegg had in fact sold the patented linings. He solicited an order for linings from the Hotel Company, and the Milwaukee Company completed the sale by filling the order. Clegg had also made other sales the same way. This was at the time he was agent for the Milwaukee Company.

The motion is based upon the proposition that this proved a sale by the Milwaukee Company, but not by Clegg. A large number of cases have been cited to us in support and denial of the defense raised on behalf of Clegg. None of these cases are in point. They go to the question of venue, or to whether the patentee had placed his invention on sale before his patent issued. There is another line of cases more nearly in point, affecting the officers and managers of a corporation, of which one is Mergenthaler v. Ridder (C. C.) 65 Fed. 853. Even this line of cases is not in point, unless the officer of the corporation himself made the sale or secured the order.

The question is a much narrower one than that discussed. It is simply whether a court of equity should afford relief against the individual who effects a sale, even when he makes the sale, not for himself, but for another. There is no ground upon which an accounting can be decreed, but there may, in a proper case, be good reason to award an injunction. The act of these defendants is one of trespass. The one defendant bought and subsequently used the patented article. Admittedly it may be enjoined against further use. The other defendant sold, and the fact that he sold for another is no very convincing reason that he should be left free to make further sales.

The point made that the sale was not complete within this district may be conceded, but none the less Clegg was at least a contributor to the infringement, and may be enjoined. Clegg offers no other defense, and the Hotel Company has contented itself with merely offering in evidence the prior patents relied upon in the answer. They were all cited for reference and passed upon when the patent issued.

[2] The first branch of the defense with which we have to deal, however, is that of the invalidity of the patent based upon the denial of invention. The question is the oft-presented one of the distinction between invention and the skill displayed in construction. The nearness of this patentee to the danger line is disclosed by his experiences in the Patent Office. The Examiner ruled against him. The Board found in his favor. The finding was made on the authority of Fonseca v. Suarez, 232 Fed. 155, 146 C. C. A. 347. This latter case was before two courts. One found one way; the other, the other. The final ruling was influenced, if not induced, by adherence to the doctrine that commercial success in doubtful cases is evidence, and often controlling evidence, of invention.

We feel called upon to say that, if the case were one of the first impression, we would unhesitatingly refuse to make the finding of invention. The dividing line indicated is one difficult to define in words. The difference between what the line separates partakes somewhat of the difference between science and art, in that invention involves the conception of what physicians call the philosophy of a given treatment or remedy, as distinguished from mere skill in applying it. There may be a stronger claim to merit in the mechanical skill displayed than in the inventive features, yet the latter is rewarded by a monopoly, and the other is not.

To make use of the instant case as an illustration of our meaning, if this patentee had been the first to conceive of the thought of a paper lining for finger bowls, he might well have been said to have come upon an idea which, when given embodiment in a concrete thing, involved invention. Given this inventive idea, the making of the thing might well involve mere skill in construction. Many finger bowls are constructed in a form in which the sides flare outward as we approach the upper edge, so that the diameter of the opening is greater than that of the bottom of the bowl. It is a convenience, if not a necessity, to have the lining take a like form. It is an advantage to have given a snugness of fit by giving to the lining an expanding capability. This is done by the patentee by fluting the paper lining, so that it may have a fanlike spread. This may indicate skill, but does it evidence invention?

We find, as did Ulysses of old, "many men of many minds." Some happ'ly have minds which readily grasp what are commonly called "mechanical principles," or the principles on which anything is constructed. They are fertile in such ideas, and are quick to see and appreciate them in any work of construction. Others can see nothing in what has been done, except evidence of skill in manipulation or construction. There is, of course, the difference between construction which calls for the display of only ordinary commonplace mechanical skill and that which calls for something more. The distinction, however, goes deeper than what is a mere difference in the degree of skill employed. Resourcefulness, or even the display of mechanical ingenuity, does not always involve invention in the patent law sense. The patent laws deal with things which are the product of ideas, not with ideas alone. In a very real sense a person may invent a way of doing something, without having invented anything in a patentable sense. An illustration is the old story of the blacksmith, who restored the broken iron bars in a window opening of a stone wall. One way of doing it was to tear out a part of the wall, insert new bars, and then rebuild the part of the wall which had been taken down. The story is that the blacksmith did the work by heating new bars, bending them so they could be inserted in the wall of the opening, and while still hot straightening them. He had displayed ingenuity in the finding of a way to do the job, but had he invented anything for which he could have taken out a patent?

The distinction, of course, is that, although given the idea of a paper lining to a finger bowl, the man who makes it not only displays skill in

completing the job, but he has made something and, if none before him has made that thing, he has not only invented the idea of making it, but he has invented the thing, because before he made it there was no such thing. The question, however, every time recurs, in making it, did he merely supply skill, or did he invent the thing he made? The question admits of no general answer, but the answer depends upon the special conditions of each case, although there are general guides to aid in arriving at the answer. One of these guides is that, if the thing made is something which, given the mere general idea of making it, any one possessed of the ordinary skill of an artisan could easily make, then there is no invention. When there is doubt, the utility of the thing made, indicated by its general recognition, and this in turn evidenced by the commercial success attending its being placed upon the market, is said to resolve the doubt in favor of a finding of invention.

As has, however, been often said, we can never be sure how much mere commercial success is due to the arts of the salesman, and how much to the merits of the thing sold. Mere numbers, moreover, often lack the impressiveness which they seem to have. When anything sold is inexpensive, and a single customer, as in the instant case, buys, in a single purchase, 10,000 of them, millions in sales has little significance. Without using the word in any opprobrious sense, the use of anything sometimes becomes a mere fad. So-called sanitary precautions often partake of this. Indeed, one of the arguments addressed to us in this case indicates the danger of allowing a monopoly. An argument used to enforce the utility of this claimed invention was based upon the anticipation that the health authorities would make the use of these linings compulsory. To grant first a monopoly, and then compel the use of the thing monopolized, is to confer a power to tax. Nothing could be more suggestive of the necessity for the exercise of caution.

Notwithstanding the views which we have expressed, we feel constrained to make a finding of validity. The finding is based wholly on the following considerations: We recognize that the case is of that character in which one may see invention where another cannot. We are bound to recognize that the experts of the Patent Office, although differing in opinion among themselves, finally made a finding of patentability, and that this finding was made with everything before them which is before us. This finding is, in consequence, one which ought to have its full weight.

We cannot shut our eyes to the cases in which validity has been given to patents in instances as near the line of no invention as is this. Because of these considerations we do not feel disposed to find that the prima facie right which the patentee has should be taken from him, particularly in view of the fact that none of the defendants before us are really disputing the plaintiff's claim. We say this because one defendant contents himself with a denial of infringement, and the other merely submits the prior patents upon which the Patent Office has passed, and submits them without the support of either expert opinion or argument of counsel. If those who have been in the business of making and selling these linings do not think enough of the defense of

the invalidity of plaintiff's patent to present the defense, we may well decline to interfere with the findings of the Patent Office.

The finding of validity is made, notwithstanding the view to which we are inclined, that the plaintiff really has a special make of lining rather than a patent right, and the difficulty we have experienced in being convinced that the fluting of these linings, which was not done until 1914, was then a new thing in this art. This fluting idea is really the keystone in the arch of the combination in each of the claims. With validity found, there is no controversy over infringement by the Hotel Company. This defendant admittedly has used. Without going into the reasons for the limitation, we limit the decree made to one of injunction, and deny the prayer for an accounting. No very broad meaning can be given to the claims, and the writ of injunction must be correspondingly restricted.

A decree, in accordance with this opinion, for an injunction and for the allowance of costs to the plaintiff, may be submitted.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes