CRAMER v. FRY.

(Circuit Court, N. D. California. April 12, 1895.)

1. PATENTS—INFRINGEMENT—LIABILITY OF AGENT.

The general agent of a corporation engaged in the manufacture and sale of infringing machines, who is the medium to execute the instructions of the company in the receipt, issue, and sale of the machines, for which he receives a salary, and a commission on all moneys reported by him, is liable for the infringement, though he makes no sales personally.

2. SAME—SEWING-MACHINE TREADLES.

The first claim of the Cramer patent for an improvement in sewing-machine treadles, which is for a vertical double brace joining the legs of the two ends of the machine, provided with holes through its lower extremities to serve as bearings, in combination with a treadle provided with trunnions having knife edges to oscillate in such bearings, is not infringed by treadles manufactured under the patent granted to the Singer Manufacturing Company, as assignee of Philip Diehl, for treadles hung in a loop-like downward extension of the usual upright cross brace, and operated on conical pointed screws extending through the sides of the downward extension of the brace, and acting in suitable bearing recesses in the ends of the treadle.

Action at law for infringement of letters patent for an invention, commenced against the Singer Manufacturing Company, a New Jersey corporation, and Willis B. Fry, manager on the Pacific coast of the business of the Singer Company. A demurrer was inter-

posed on behalf of the Singer Company upon jurisdictional grounds, and was sustained upon the authority of Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, and other cases. The action then proceeded against Fry alone.

The patent sued upon was granted to the plaintiff on January 30, 1883, and was for an improvement in sewing-machine treadles. In the specification the patentee described his invention as relating to improvements in the bearings of sewing-machine treadles, and in the specification and drawings the treadle of the patent was specifically described, and shown to work upon trunnions integral with the treadle, and extending into bearing holes in the lower ends of the usual upright cross brace of the machine, said trunnions being V-shaped, or sharpened to an edge along their lower surfaces; the usual foot bar or cross bar passing through the lower ends of the upright cross brace below the treadle, and serving its customary purpose of rigidly joining the cross brace and legs of the machine at their lower points of contact.

Drawings of Plaintiff's Patent.

Specification and Claims of Plaintiff's Patent.

"To All Whom It may Concern: Be it known that I, Herman Cramer, of Sonora, in the county of Tuolumne, and state of California, have invented a new and improved sewing-machine treadle; and I do hereby declare that the following is a full, clear, and exact description of the same, reference being had to the accompanying drawings, forming part of this specification: My invention relates to improvements in the bearings of sewing-machine treadles; and it has for its object to provide means—First, to keep the treadle bearings rigidly in line and at a fixed distance apart, to avoid friction; and, second, to make its movement in use noiseless. To this end my invention consists in the construction and combination of parts herein-

after fully described and claimed, reference being had to the accompanying drawings, in which Fig. 1 is a perspective view of a portion of a sewing machine, showing my invention. Fig. 2 is a transverse vertical section through one bearing of the treadle. A represents the treadle provided with the usual pitman connection by which to run the sewing-machine wheel. B represents the two trunnions, cast as a portion of the treadle, and extending from its sides into loopholes in the common cast-iron cross brace, C. These trunnions are sharpened to an edge or corner along their lower sides, and the lower end of the loophole is hollowed to an angle more obtuse than the edge of the trunnion, to serve as a bearing for the same, and permit the rocking motion common to treadles. C represents the usual cast-iron double brace connecting the two end legs diagonally in a plane generally vertical. The lower ends of this brace are secured directly to the web of the legs by bolts, d, and for convenience and strength I make the two ends of the common cross bar, D, serve as these bolts. The upper ends of the brace are secured, as usual, either to the web of the legs, or to the table of the machine, near the legs. The treadle and its trunnion bearings are wholly independent of the cross bar, D, except its service, as stated, to hold the brace to the legs. The bearing holes in the brace are formed into long vertical loops to permit the entrance of the treadle. Pieces of leather, F, or other soft material, cover the top and end of each trunnion, to serve as cushions to keep the same close in its bearing, to prevent the noise which would result were the trunnions permitted to bounce and thump endwise when the treadle is in motion. The leather, F, is fitted to the curve of the upper side of the trunnion, which is an arc of a cylinder whose center of oscillation is the lower edge of the trunnion. The same leather also interposes between the end of the trunnion and the adjacent iron. f is a block, serving as a mere backer, to which the cushion, F, is attached. This block conforms to the back and top side of the cushion, and fills the loophole in the brace above the trunnion. It also has tangs or projections, e, resting in suitable recesses in the brace, C, which are held between the brace and the web of the leg, E, by which means the block and cushion are held in place. Below the bearings of the trunnions, B. I provide cups, M, attached to the ends of brace, C, to catch the oil that usually drips from such bearings. By this construction my treadle bearings are rigidly fixed, and in no way liable to get out of line or to require adjustment. The usual noise is prevented, and overflowing oil is caught before it can do damage. I am aware that sewing-machine treadles have before been provided with V-shaped bearings, and I do not claim the same as my invention; but what I claim, and wish to secure by letters patent, is: (1) The vertical double brace joining the legs of the two ends of a sewing machine, provided with holes through its lower extremities, to serve as bearings, in combination with a treadle provided with trunnions fitted to oscillate in said bearings, substantially as specified. (2) The sewing-machine legs, E, the vertical double brace, C, secured thereto, and provided with holes to serve as bearings for the treadle, A, and the treadle provided with trunnions, B, to oscillate in said bearings, in combination with the cushion, F, and the block, f, as and for the purpose specified.          Herman Cramer.

"Witnesses:
"Frank W. Street,
"Charles L. Street."

The first claim only of plaintiff's patent was alleged to have been infringed.

Letters patent for certain improvements in sewing-machine stands and treadles were granted to the Singer Manufacturing Company, assignee of Philip Diehl, on October 14, 1884. Under this patent the Singer Company constructed and sold in sewing machines a form of treadle hung in a looplike downward extension of the usual upright cross brace, which downward extension also served as the ordinary foot bar or cross bar. The treadle operated upon conical pointed screws extending through the sides of the downward extension of the brace and acting in suitable bearing recesses in the ends of the treadle. The following drawing from the Diehl patent fully illustrates its treadle and bearings:

The defendant did not himself make, use, or sell any machine containing the Diehl treadle, but exercised supervision over the Pacific coast business of the Singer Company, under instructions from the central office at New York, and, as a part of his compensation, received a commission upon the net profits accruing to the Singer Company from its entire Pacific coast business. At the conclusion of the testimony, counsel moved for an instruction to the jury to bring in a verdict for the defendant, because (1) the defendant, as a mere agent or employé, was not liable in an action at law for damages on account of infringements committed by the Singer Company, if at all; and because (2) the Diehl treadle used by the Singer Company was not an infringement of the plaintiff's device.

John L. Boone, Jos. Nougues, and Chas. F. Hanlon, for plaintiff.
Wheaton, Kalloch & Kierce and Chas. K. Offield, for defendant.

McKENNA, Circuit Judge (orally). At the close of the plaintiff's testimony, the defendant made a motion for the court to instruct the jury to find a verdict for the defendant, which motion

was reserved for consideration. The motion was again repeated at the close of the testimony in the case. The motion is made on two grounds. One is that the defendant in the case is the agent of the Singer Sewing-Machine Company, and is not liable; and the other, that there is no infringement.

Considering the first ground, in an action in form ex delicto,—that is, for a tort,—the rule is, all who participate in a wrong are liable. In other words, a tort is the separate act of each individual, and all may be joined, or either may be sued separately. The relation of master and servant—principal and agent—does not relieve from liability. It may make the master or principal liable, but it does not release the servant or agent.

"An agent or servant,"—I read from 1 Chit. Pl. p. *84,—"an agent or servant, though acting bona fide under the directions and for the benefit of his employer, is personally liable to third persons for any tort or trespass he may commit in the execution of the orders he has received. If the master has not the right or power to do the act complained of, he cannot delegate an authority to the servant which will protect the latter from responsibility. Therefore a servant may be charged in trover, although the act of conversion be done by him for his master's benefit. And a bailiff who distrains is liable, if the principal has no right of distress. And a customhouse officer may be sued for a wrongful seizure made by him in that character. There is no injustice in this doctrine, as regards the servant; for, if the act were not manifestly illegal, the indemnity of the principal to the servant against the consequences is not illegal, and will, in many instances, be implied."

What is the nature of an action for an infringement of a patent? Undoubtedly a tort, and the rule necessarily applies, unless the statute relieves from it. The statute says: "That damages for the infringement of any patent may be recovered by action on the case. * * *" There is no obscurity as to what this means. An action on the case is a well-known action in form ex delicto. Judge Lowell, in Nickel Co. v. Worthington, 13 Fed. 392, says: "Infringement is not a trespass." He evidently did not mean it was not a tort, and the distinction he made between trespass and case—which was the common-law one—did not justify the learned judge in applying the law of torts to one and exempting the other. Trespass and case are both forms of action ex delicto; both brought for torts,—the first those committed by force and immediately; the second, those not committed with force, or not immediately. The rule as to participants and parties applies to both. The inquiry necessarily is, who are participants in an act of infringement in making or using or selling the patented article? Regarding cases alone, they are neither, abstractly considered, clear, nor, comparatively considered, harmonious. Robinson on Patents says (section 912):

"How far the officers, stockholders, and employés of a private corporation participate in its infringing acts, and thereby share its liability, is still an open question. That they may be enjoined whenever this is necessary to protect the patentee against future infringements is universally conceded; but whether they can be held in damages for past infringements has been variously decided. One opinion, following the doctrine of limited liability as usually applied to private corporate bodies, regards the infringing act as the act of the corporation alone, and declares that none of its members or officials legally participate therein. Another, affirming the rule that every voluntary

perpetrator of a wrongful act of manufacture, use, or sale is an infringer, considers its directors, agents, and other servants, actually employing or authorizing the employment of the patented invention, as guilty of the infringement, and personally answerable to the patentee. A third, viewing the acceptance of the benefit of the infringing act as furnishing the test of liability, treats its stockholders as infringers, whether or not they are its officers or agents, and exempts the latter, unless they are also members of the corporation. The first opinion is scarcely consistent with a due regard to the rights of the patentee, whose invention might then be practiced with impunity by an insolvent corporation, nor with the general tenor of the patent laws, which permit no voluntary and unauthorized act of manufacture, use, or sale, direct or indirect, to pass unpunished. The third confuses the benefit derived by the stockholders with that accruing to the corporation,—the benefit of the former being no more closely related to the infringement than that of creditors or innocent employés, or that of dealers in or users of the products of infringing processes,—and is pregnant with evil and unjust consequences to all members of private corporations, especially to minorities who neither acquiesce in the infringement nor in the appointment of the officers or agents by whom it is committed. The second is in harmony with other doctrines of the law, sufficiently protects the patentee, and justly punishes those whose willful acts place them on the same footing with individual infringers. Under this opinion, all agents who perform acts of infringement, and all stockholders, directors, and other officers who, in the prosecution of the business of the corporation, authorize them, participate in the infringement, and are personally responsible to the patentee."

The learned author's conclusion is certainly in harmony with the law of the liability for torts of misfeasance. See Cooley, Torts, 133 et seq. A strict application of the rule would make all servants liable, but a distinction has obtained between mere workmen and agents. The distinction may be artificial and arbitrary, and though starting apparently in a dictum of Judge Hopkinson in Delano v. Scott, Gilp. 489, Fed. Cas. No. 3,753, and based upon consequences somewhat fanciful, nevertheless seems to have maintained itself, and is as firmly established as nisi prius decisions can establish any rule of law. With this exception, the rule is, both on principle and authority, that servants and agents are responsible. Estes v. Worthington, 30 Fed. 465, and cases cited; Rob. Pat. § 920, and notes; National Car-Brake Shoe Co. v. Terre Haute Car & Manuf'g Co., 19 Fed. 514. It is not necessary to review all the cases. They are classed in the quotation from Rob. Pat., supra. What acts of participation in infringement, if there was infringement, did the defendant perform? In his answer he says:

"That during more than twelve years last past the said corporation, the Singer Manufacturing Company, has had and maintained a place of business in the city of San Francisco, in the said Northern district of California, where it has carried on a local business in selling the said Singer sewing machines, and which machines it has sent from its factory in New Jersey to said city of San Francisco for that purpose. Defendant further avers that, in carrying on its said business of selling said sewing machines, the said corporation, the Singer Manufacturing Company, has employed this defendant to act as its employé in making sales of said sewing machines, and in attending to said local business in said city of San Francisco, and this defendant has acted as the employé of said corporation, the Singer Manufacturing Company, in repairing and using, so far as it was necessary to use them for testing their condition, and in selling, the said sewing machines, and has done whatever was necessary in and about the carrying on of said local business in the city of San Francisco, as the employé of said corporation, the Singer Manufacturing Company, and in no other way or manner whatever; that he has neither made nor used nor repaired nor sold any sew-

ing machines or sewing-machine treadles in his own right, nor in his own name, but that all the making, repairing, using, and selling of sewing machines or sewing-machine treadles that has been done by this defendant, and which is claimed to constitute an infringement of said letters patent, has been the making or repairing or using or selling done and performed by the said corporation, the Singer Manufacturing Company, by and through this defendant, as its employé, and in no other way; that this defendant has not, at any time, been the owner of any sewing machines or treadles, and has not, at any time, either made or used or repaired or sold any sewing machines, or sewing-machine treadles, or sewing-machine apparatus, or sewing-machine attachments of any nature or kind, otherwise than as employé as aforesaid."

He testified, however, that he made no sale personally, but he is at the head of the agency of this coast, and is the medium to execute the instructions of the company in the receipt and issue and sale of the machines, and for this he receives a salary of $25 per week, and a commission on all moneys reported by him. Manifestly, the amount of commission is dependent on the sales, rising and falling with them. I think this makes him quite an active instrument in the disposition of the machines and participant in the infringement, if infringement exists.

That brings us to the second ground of defendant's motion. Infringement, of course, is usually a question of fact, and whether an answer to this question is a question of law, as contended for by defendant, will be determined by the construction of the patent. It has two claims, the first only being alleged to be infringed. It is as follows:

"What I claim, and wish to secure by letters patent, is the vertical double brace joining the legs of the two ends of a sewing machine, provided with holes through its lower extremities to serve as bearings, in combination with a treadle provided with trunnions fitted to oscillate in said bearings, substantially as specified."

The language of itself is clear enough, and the controversy between the parties is whether it shall be confined to the mechanism described and its arrangement, or be held to cover structurally different mechanism, and a different arrangement. In the first specification filed by plaintiff he said, reverting to what took place in the patent office:

"I, Herman Cramer, of the city of Sonora, in Tuolumne county, in the state of California, have invented certain improvements in a treadle to be used in sewing machines, or other machinery where a noiseless treadle may be required, of which the following is a specification."

He then describes the treadle. He says the treadle is V-shaped; the treadle bar rests in socket in the brace, C, which is immediately above a cross brace; and then says:

"My invention consists in having the ends of the treadle bar V-shaped, to fit in hole in brace, C, also ◊-shaped to receive the ends of the treadle bar. This V-shaped treadle bar in brace, C, entirely prevents noise from the treadle, is self-adjusting, and does away with the necessity of coons and set screws now in use. This I claim as my invention."

This was rejected for informality by the examiner of the patent office, but in his letter he refers to a patent to G. W. Gregory, April 18, 1882, as exhibiting the alleged invention. This patent is in evidence, and is one for knife-edge bearings, which seems to indi-

cate that the examiner thought that Cramer's invention was for knife-edge bearings. To correct the informality, other specifications were filed, which are as follows:

"I, Herman Cramer, of the city of Sonora, in Tuolumne county, in the state of California, have invented certain improvements in a treadle and brace to be used in sewing machines, or other machinery where a noiseless treadle may be required, of which the following is a specification: My invention consists in a combination of the usual platform, marked 'A,' in Fig. 1 of diagram on treadle bar. The ends of said treadle bar, marked 'B,' are to bear against mufflers."

Then he proceeds to describe as in the other:

"The treadle bar, with mufflers on the ends working or bearing in or on brace, entirely prevents noise from the treadle, is self-adjusting, and does away with the necessity for coons and set screws now in use. [Then he represents by figures.] What I claim is a combination of brace, C, with socket or bearing in it or on it, to receive the treadle bar with the mufflers at the ends of treadle bar, or in or on brace, C, in connection with said brace, C, and the treadle bar in connection with brace, C, and mufflers to work in or on the brace, C, substantially as set forth."

To these specifications and claims the examiner replied on August 14, 1882:

"Applicant's amended claims are met by the patent of J. E. Donovan, June 28, 1880, No. 243,529, in view of which a patent is again refused."

The Donovan patent is in evidence, and I will not detail it. It is also for knife-edge bearings situated on the cross bar or on the legs of the machine.

Becoming dissatisfied with his attorneys, as he testifies, they not comprehending him or his invention, he changed to Munn & Co., of Washington, considered to be competent patent attorneys. They filed another specification, which specification constitutes the specification of the patent. It is as follows:

"Be it known that I, Herman Cramer, of Sonora, in the county of Tuolumne, and state of California, have invented a new and improved sewing-machine treadle; and I do hereby declare that the following is a full, clear, and exact description of the same, reference being had to the accompanying drawing, forming part of this specification: My invention relates to improvements in the bearings of sewing-machine treadles; and it has for its object to provide means, first,"—mark the language,—"improvements in the bearings of sewing-machine treadles; and it has for its object to provide means— First, to keep the treadle bearings rigidly in line, and at a fixed distance apart, to avoid friction; and, second, to make its movement, in use, noiseless. To this end my invention consists in the construction and combination of parts hereinafter fully described and claimed,"—mark the language again,— "my invention consists in the construction and combination of parts hereinafter fully described and claimed, reference being had to the accompanying drawings, in which," etc.

Then follows a detailed representation by figures, disclaiming, however, the invention of knife-edge bearings, simply, by the following language:

"I am aware that sewing-machine treadles have before been provided with V-shaped bearings, and I do not claim the same as my invention."

Then follows the claim which I have already read. Accompanying this specification was the following letter from Munn & Co.:

"A new oath is herewith filed. Gregory, referred to, pivots the grooved trunnions of his treadle upon knife edges secured within the upper loops of

two collars, which are secured to the cross bar by means of set screws to keep them from turning. Donovan pivots his treadle upon its trunnions, having sharpened edges, in grooves in the cross bar, where it is held by collars provided with flanges projecting over the trunnions. Applicant pivots his treadle upon the sharpened edges of its trunnions, in loopholes in the two ends of the brace, which is bolted to the legs of the machine by the two ends of the cross bar. This service of the cross bar might be as well performed by two short bolts; but, the bar being a usual cross tie to stiffen the legs, applicant uses its ends as bolts to hold his brace ends to the legs. We have rewritten the specification, to elucidate the inventor's claim. Should the case meet with favorable consideration, a new drawing will be furnished. For the purpose of examination, see pencil sketch on sheet of drawing filed."

The examiner still objected, and seemed persistent in understanding that the patent was for the knife-edge bearings, whereupon Munn & Co. write another letter, dated October 25, 1882, and say:

"In the matter of the application for letters patent for sewing-machine treadle by H. Cramer, filed May 25, 1882, we file herewith a new drawing in this case.

"Your obedient servants,                               Munn & Co."

It will be observed that these proceedings all tend to making special the devices, and fixing their relations. It must be assumed, of course, that the technical language of the claim of the patentee was used technically. The double brace is provided with holes to serve as bearings, and the treadle provided with trunnions having knife edges to oscillate in said bearings. What, then, is a bearing? It is defined by Webster to be, in mechanics: (a) The part in contact with which a journal moves, as the journal boxes, trusses, etc.; (b) that part of the shaft or axle which is in contact with the supports. To the same effect is Knight's American Mechanical Dictionary, only reversing the order: (a) The portion of an axle or shaft in contact with its collar or boxing; (b) the portion of the support on which the gudgeon rests and rotates. The definition of the witnesses makes the bearing consist of two parts, one movable and one immovable; the definition of the books makes it consist of either part,—either the movable or immovable part; the patentee uses it for the immovable part. The holes in the cross brace are to be the bearings for the trunnions of the treadle. The corresponding bearing in the defendant's machine is not in the treadle. In this particular the devices are different,—the bearings are not in the same place. In plaintiff's device it happens that both bearings are in the cross brace. In defendant's device, however, even if we consider the support as part of the bearings, as contended for by plaintiff, only one bearing is in the cross brace. But in the definition of a bearing we observe that the support is not a part of it; a bearing being "the portion of the support on which the gudgeon rests and rotates." Again, the treadle of the patentee is provided with trunnions with knife edges; the treadle of the defendant is without trunnions and without knife edges. This makes another difference. It is familiar law that all the elements of a combination must be used to make infringement, no matter how immaterial any one may be. Is a treadle with a trunnion the same thing as a treadle without a trunnion? If not, the omission of the trunnion is the omission of the element. But, passing this, is a treadle with

a trunnion with knife edges having bearings in holes in the cross brace substantial to the plaintiff's purpose? It seems to me to be. It was urged as the value of the plaintiff's device by Mr. Munn in his letter of October 25th, supra, and the language of the claim cannot be escaped.

It appears to me this case is very similar to Prouty v. Ruggles, 16 Pet. 337, cited by defendant's counsel. In the latter case the patent was for a combination. The syllabus of the case says:

"Where that third element, as described in the specification, was forming the top of the standard of a plow so as to secure brace and draft, by extending the standard back from the bolt to such a distance as to form a brace to the beam, and making the after part of this extension square, in such a manner that, being jogged into the beam, it relieved the bolt in a heavy draft. Held, that the specification and claim covered only this described manner of relieving the bolt, and, if the defendant did not jog the bolt into the beam, he did not infringe." '

The court in commenting on the case, at page 339, states what the claims are:

"(1) * * * (2) * * * (3) The forming the top of the standard for brace and draft. We do not intend to confine our claim to any particular form or construction. * * *"

The court, commenting, says:

"The plaintiffs offered to prove utility of the alleged improvement, which proof was dispensed with by the defendants. Certain plows alleged by the plaintiffs to be made in conformity with their letters patent, and certain plows made by the defendants, which were the alleged infringement of the plaintiffs' patent, were produced in court; and no substantial difference between them was shown by the defendants to exist, unless the fact that the top of the standard in the defendants' plow was not jogged into the beam, and did not extend so far back upon the beam, was to be so considered. And the plaintiffs offered evidence to show that the top of the standard formed, as stated in the specification, would serve for both purposes of brace and draft, although not jogged into the beam. The defendants introduced no evidence. The counsel for the plaintiffs requested the court to instruct the jury as follows, to wit: 'The counsel of plaintiffs respectfully move the court to instruct the jury that if the defendants have used, in combination with the other two parts, a standard of the description set forth in the specification, and it is proved to serve both for brace and draft, such use was an infringement of the plaintiff's claim in that particular, although the defendants may not have inserted into a jog in the beam. Also, that, if any two of the three parts described as composing the construction claimed in the specification had been used in combination by the defendants, it was an infringement of the patent, although the third had not been used with them.' The court refused to give the instruction so prayed, or either of them, in manner and form as prayed by the plaintiffs; but did instruct the jury as follows, to wit: 'That, upon the true construction of the patent, it is for a combination, and for a combination only. That the combination, as stated in the summing up, consists of three things, namely: (1) * * * (2) * * * (3) The forming the top of the standard for brace and draft. That, unless it is proved that the whole combination is substantially used in the defendants' plows, it is not a violation of the plaintiffs' patent, although one or more of the parts specified, as aforesaid, may be used in combination by the defendants. And that the plaintiffs, by their specification and summing up, have treated the jogging of the standard behind, as well as the extension, to be essential parts of their combination for the purpose of brace and draft; and that the use of either alone by the defendants would not be an infringement of the combination patented.' And thereupon the jury rendered their verdict for the defendants."

The supreme court held that:

"The first question presented by the exception is whether the extension of the standard, and the jogging of it into the beam, are claimed as material parts of the plaintiffs' improvement. We think they are."

These views were elaborated, but I need not quote further.

But plaintiff contends, if the parts of the defendant's device be different, they are nevertheless equivalents. The plaintiff's invention is an extremely narrow one, and I think it would broaden it too much to give it so liberal a rule of equivalents. It seems to me the comments of the supreme court in the cases of Miller v. Manufacturing Co., 151 U. S. 186–208, 14 Sup. Ct. 310; Knapp v. Morss, 150 U. S. 221–230, 14 Sup. Ct. 81; Wright v. Yuengling, 155 U. S. 47–51, 15 Sup. Ct. 1; Coupe v. Royer, 155 U. S. 565–576, 15 Sup. Ct. 199; Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118,—apply.

In Knapp v. Morss the court said (and I only quote the principle, omitting the facts):

"If the Hall patent was a valid pioneer invention, the doctrine of equivalents might be invoked with regard to the sliding blocks and rests, and thus a different question would be raised; but, being confined to the specific elements enumerated by letters of reference, it is neither entitled to a broad construction, nor can any doctrine of equivalents be invoked so as to make the appellants' device an infringement of the second claim in controversy. Our conclusion, therefore, is that the Hall patent is invalid, and, further, if it could be sustained at all, it would have to be in the most restricted form, and, thus restricted, it is not infringed by the appellants. It follows, therefore, that in each case the judgment of the courts below must be reversed."

In the case of Wright v. Yuengling the same doctrine is applied. The court, after commenting on the narrowness of plaintiff's invention, said:

"But the absence of the semicircular connecting piece, d, is a circumstance worthy of more serious consideration. In the defendant's engine there is no such semicircular connecting piece as is described in the Wright patent, but the guiding cylinder extends backward to a connection with the head of the steam cylinder, the side of such guiding cylinder, through which the crosshead operates, containing an opening oval in shape, and narrower at each end than in the center. The equivalent for the connecting piece, if found at all, must be in this continuation of the guiding cylinder backward to the steam cylinder. But this portion of the cylinder is neither scooped out in a semicircular form, nor does it admit of ready access to the crosshead shown at this point in the Wright patent. Instead of access to the crosshead being easier at this point than any other, it is in reality more difficult, as the oval opening is narrower there than in the center. Now, while this semicircular connecting piece may be an immaterial feature of the Wright invention, and the purpose for which it is employed accomplished, though less perfectly, by the extension of the guiding cylinder in the manner indicated in defendant's device, yet the patentee, having described it in the specification, and declared it to be an essential feature of his invention, and having made it an element of these two claims, is not now at liberty to say that it is immaterial, or that a device which dispenses with it is an infringement, though it accomplish the same purpose in, perhaps, an equally effective manner."

In Coupe v. Royer the court said:

"The principle of construction which we think applicable to plaintiffs' patent is that such construction must be in conformity with the self-imposed limitations which are contained in the claims. Such claims are the meas-

ure of their right to relief. Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274, 278, was a case where the manufacture of round· bars, flattened and drilled at the eye, for use in the lower chords of iron bridges, was held not to be an infringement of a patent for an improvement in such bridges, where the specification described the patented invention as consisting in the use of wide and thin drilled eye bars applied on edge; and Mr. Justice Bradley, delivering the opinion of the court, said: 'It is plain, therefore, that the defendant company, which does not make said bars at all (that is, wide and thin bars), but round and cylindrical bars, does not· infringe this claim of the patent. When a claim is so explicit, the courts cannot alter or enlarge it. If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent and an application for a reissue. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the patent office, or the appellate tribunal to which contested applications are referred. When the terms of a claim in a patent are clear and distinct (as they should always be), the patentee, in a suit brought upon the patent, is bound by it. * * * He can claim nothing beyond it.' "

To the same effect is the case of Deering v. Harvester Works.

It follows from these views that the instruction will have to be granted. To make myself clear as to the grounds of my ruling, defendant's motion is denied on the first point, to wit, that defendant is only the agent of the Singer Sewing-Machine Company. It is granted on the second point, to wit, that the defendant is not guilty of infringement because the machines sold by him are not similar to that described in the plaintiff's patent.

Mr. Boone: Will your honor permit us to save an exception?

The Court: Of course. Gentlemen of the jury, you may not understand my views, which are more or less technical, and addressed to the lawyers rather than to the jury, but it follows that it devolves upon me as a matter of law to instruct you to bring in a verdict for the defendant. This being a matter of law, you have no concern with it. If I have committed an error, it is easily corrected. You will therefore find a verdict for the defendant. You can do that by retiring to the jury room, or select one of your number as foreman here, and sign the verdict.

The jury accordingly selected one of their number as foreman, and signed a verdict in favor of the defendant.