**STRAIGHT SIDE BASKET CORPORA-
TION et al. v. KULL et al.
No. 1992.**

District Court, D. Idaho, S. D.
Sept. 27, 1938.

Edwin T. Bean and Richard W. Treverton, both of Buffalo, N. Y., and Richards & Haga, of Boise, Idaho, for plaintiffs.

Herbert H. Porter, of Washington, D. C., and George Donart, of Weiser, Idaho, for defendants.

CAVANAH, District Judge.

The plaintiffs bring this patent suit based upon the Schmidtke patents 1752856 and 1895586; relating to the manufacture of fruit and vegetable baskets.

The patents were issued to St. Joe Iron Works, now the St. Joe Machines Incorporated. The Straight Side Basket Corporation acquired exclusive right to issue licenses under the patents. The validity of the claims involved of the patents and infringement are in dispute. The plaintiffs assert that defendants infringed claims 1, 2, 4, 5, 6, 7, 15, 16, 17, 18 and 19 of patent 1752856, and claim 2 of patent 1895586, which relate to the machine and apparatus and method used. The Defendant Kull was licensed to manufacture under the patents from April 1, 1930 to May 18, 1937 and received four licenses covering four different sets of machine attachments. During that period he paid the license fees, and shortly after the termination of the license agreements, which was on May 18, 1937, he complied with the requirements and returned to the plaintiffs the licensed attachments. The defendant Blunck, during a portion of the years Kull was a licensee, solicited orders for baskets in Idaho, and transmitted some of the orders to Kull who accepted and filled them with baskets manufactured under his licenses. After the termination of the license agreement Kull continued the manufacture of baskets and the principal questions in controversy are, did he continue the use of machinery and methods used in the manufacture of baskets, covered by the patents, and did Blunck continue to solicit orders for such baskets made on infringing attachments and by infringing methods, and are the claims of the plaintiffs invalid?

The basket making industry is old, and was first made by hand over basket forms, and the portion of that art we are considering is the continuous stave bushel and half bushel basket. Machines were

first developed for the manufacture of two hoop round bottom baskets. A great portion of that machinery was made by the St. Joe Iron Works and the Saranac Machine Company, who have continued to manufacture machinery for making the same round bottom baskets, but it became recognized that the two hoop round bottom basket was not a suitable container for the packing and transportation of certain vegetables and fruit and during the years 1923 and 1924 Schmidtke invented the straight sidewalled continuous stave basket with a bottom hoop, extending an inwardly arched bottom. After numerous experiments Schmidtke invented a method and apparatus for producing this basket economically and applying the bottom hoop while the basket bottom was being held arched and under tension. It involved a machine for a new and popular basket which went into popular and immediate use. A great demand existed for the necessary attachments and equipment changing the two hoop round bottom machine over to the manufacture of the continuous stave, three hoop straight side with a concave bottom basket covered by the Schmidtke patent and which had superior advantage over the old round bottom basket, as it stands straight and its bottom does not sag down. It can be packed one on another to great height. The invention set forth in claim 2 comprehends the location of the lower third hoop adjacent the ends of the bottom members and near the bottom of the side walls and the essential element of the claim is reinforcing hoop adjacent and close enough to the ends of the bottom members to maintain their generally inwardly arched configuration, a continuous stave basket having straight side walls and abrupt and sharp or break at the bottom. The location of the third hoop adjacent to the bottom serves to assist in maintaining the arch of the basket bottom. Prior to securing the license for the use of the Schmidtke machine and method for the production of the Schmidtke basket, the defendant Kull agreed to consider the Schmidtke patents valid. He operated under the license for seven years, and the process he used during that period was the process covered by the Schmidtke patents until he decided to cancel the license. He continued manufacturing and selling of that basket after the cancellation of the license without the payment of royalty, with the hoop located adjacent to the bottom of the basket to maintain the arched condition in the bottom of the basket and the machinery and attachments he used were the machinery and attachment disclosed in the Schmidtke patent, and while a licensee he changed to making baskets with the lower edge of the bottom hoop substantially at the bottom of the basket. The method of manufacturing baskets now by him is identical with the method he used while a licensee with the only difference that the bottom hoop had been raised a distance of approximately ¼ to ⅜ of an inch. The same three hoops, and the bottom hoop being located adjacent to the bottom; the same abrupt bend of the staves between the side walls and the bottom and the same inward arch of the bottom, and the same straight side wall construction are retained by Kull. There is no difference in the function of the hoop at the bottom. The arch in defendants' basket is sufficient to strengthen the basket and achieve the objects of the invention. From a comparison of the elements of the claims of the patent with the elements of the defendant Kull's machine and methods, the evidence establishes clearly an infringement as the same function and purpose is accomplished by the machinery and method of the patent and by the Kull machine and method. The principle governing the question of infringement is that infringement is not avoided by mere change of form or substitution of mechanical equivalent, as it is the claims that are controlling and not the specific form of the invention.

This principle is recognized by the Supreme Court in the case of Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 13, 74 L.Ed. 147; " 'so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L.Ed. 1,000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L.Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement." Again in the case of Crown

Cork & Seal Company v. Aluminum Stopper Co., 4 Cir., 108 F. 845, 866: "Reference to some of the decisions of the supreme court will show that infringement is not avoided by mere change of form, or renewals of parts, or reductions of dimensions, or the substitution of mechanical equivalents, or the studious avoidance of the literal definition of specifications and claims, or the superadding of some improvement. The court will look through the disguises, however ingenious, to see whether the inventive idea of the original patentee has been appropriated, and whether the defendants' device contains the material features of the patent in suit, and will declare infringement even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." Oates v. Camp, 4 Cir., 83 F.2d 111.

The two baskets are substantially identical and the slight change in the form of the Kull basket is merely a colorable departure from the Schmidtke basket. There appears a substantial identity. It is immaterial under the law on which parts of the combination the hoops or other parts in controversy are located so long as they function alike in both structures and the same results are obtained. Telescope Cot Bed Co. v. Gold Medal Camp Furniture Co., 2 Cir., 229 F. 1002, 1004; Elyria Iron & Steel Co. v. Mohegan Tube Co., Inc., et al., 2 Cir., 7 F.2d 827.

When the doctrine of equivalents is given consideration, the machines and basket of the defendant Kull infringe the claims of the plaintiffs and he is estopped under the evidence to deny the validity of the claims of the plaintiffs as it appears that the license agreement which was in force between the plaintiffs and the defendant Kull contains a definite provision that the licensee agrees that he "will not at any time hereafter, directly or indirectly infringe such patents, nor dispute, nor contest the validity of any such patents, or the novelty or utility or patentability of any subject matter of any such patents, or the title thereto of licensor, nor directly or indirectly assist any other person contesting the same, and that such patents shall throughout their respective terms, and for all purposes be deemed to be in force and valid."

"Licensee agrees that the expiration of this license or its termination shall not in any way affect the operation of this section nor release nor discharge licensee from his obligation or his admissions or estoppels herein contained."

A further provision in the license agreement appears that "if the patents be declared invalid by a United States District Court by a decree not appealed from, or by a Court of last resort in the circuit in which the licensee is domiciled and the case be not carried to the Supreme Court of the United States, then the title of said 'attachment' shall vest in the licensee and the payment of royalties shall cease."

It appears that a suit is now pending where a district court has held certain claims were invalid in the Zapt case, which is now on appeal to the Circuit Court of Appeals for the Sixth Circuit. The provision in the license agreement is clear and leaves no doubt as to its meaning, as it relates to a final decision of invalidity by a Court of last resort in the Circuit in which the licensee is domiciled and the case being not carried to the Supreme Court of the United States. No such decision has been made.

The thought urged by the defendants that such provision in the license agreement is against public policy only relates to the world at large and not to the licensed defendant, who has taken advantage of the patent, for as to him it remains in force and is valid. Dunham v. Bent et al., C.C., 72 F. 60.

Reliance is had by the defendants on the principle of law announced in the case of Philadelphia Creamery Supply Co., Ltd., et al. v. Davis & Rankin Bldg. & Mfg. Co., et al., C.C., 77 F. 879, where a discussion is had as to whether such a term is against public policy, but after a study of that decision it will be seen that it is not applicable to the situation here and sustains the thought urged by the plaintiffs as the Court there said [page 882]: "Public policy permits reasonable restraints upon trade. Had the defendants, engaged in the manufacture of these machines, sold their stock to the complainants, they might, as a part of the transaction, have prohibited themselves from engaging in a like trade again within reasonable limits, or for a reasonable period. No public policy would have forbidden that, unless the restriction would have been injurious to the party prohibited, or to the general public at large. How will the defendants themselves, if the contract under consideration

be enforced, be injured to the extent that they ought to be protected? They acted openly, and received the consideration for their action, and the world in every other field is still open to them. The test of the application of this rule of public policy is: Would the prohibition proposed unconscionably injure the individual, or greatly injure the public? How will the general public be injured? Their right to dispute the validity of the patent, through any infringer who has the courage to engage in the manufacture of these machines, and their right to use these machines thus manufactured, are not affected by this stipulation. They lose at most the benefits only of competition from one who cannot compete without violating his own word and just obligation."

While the Courts will inquire into the question of the patentability of an invention in a patent infringement case where the situation does not involve the defendant as an infringer and a former licensee and agrees not to deny the validity of the patents, the estoppel of the defendants to contest the validity of the patents is a continuing one throughout the terms of the patents. There has been no waiver or cancellation of that continuing covenant, and where such a situation exists as appears in the record, defendants cannot question the validity of the patents.

The evidence is clear that the co-defendant Blunck is a contributory infringer of both the patents. He solicited orders for the infringing baskets manufactured by Kull and as a result Kull shipped baskets to the customers and when received Blunck received a commission on the sales. Kull and Blunck did at times go together around the territory on sale trips, they seemed to have had close connection as far as the territory was concerned and under the facts and circumstances in the present case Blunck is regarded as a contributory infringer of both patents. Patton v. Clegg et al., D.C., 274 F. 118; Young Radiator Co. v. Modine Mfg. Co., 7 Cir., 55 F.2d 545; Consolidated Store-Service Co. v. Herzog et al., C.C., 100 F. 299; General Electric Co. v. De Forest Radio Co., 3 Cir., 28 F.2d 641.

Blunck by reason of his close association with Kull in activities connected with Kull's basket is subject to the same treatment and disabilities as Kull, and is estopped to deny the validity of the patent. Featherstone v. Ormonde Cycle Co. et al.,

C.C., 53 F. 110; Cramer v. Fry, C.C., 68 F. 201; Crown Cork & Seal Co. v. Standard Brewery, C.C., 174 F. 252. He comes under the legal definition of infringer; which is one who makes use, or contributes to or induces the manufacturer to use and sell a patented invention. The doctrine of estoppel under such a license agreement extends to all parties and privies. Here the defendant Blunck assists the defendant Kull in the distribution of the infringing basket, made on infringing machine and by infringing methods, with knowledge of the infringing situation. By reason of sending Kull orders for large quantities of infringing baskets, induced Kull to continue infringing acts and is active jointly with him. Frick Co. v. Lindsay et ux., 4 Cir., 27 F.2d 59.

From a mere comparison of the baskets manufactured by the plaintiffs and those manufactured by the defendant Kull, one is able to comprehend what are the inventions described in the patent and from such comparison whether one device infringes upon the other. The question of infringement or non-infringement, after a comparison of these baskets which are in evidence, can be ascertained what are the inventions described in each of the patents, and from such comparison it appears clear that the Kull basket infringes upon the plaintiffs' basket.

The defendants presented numerous prior art patents but they are lacking in certain elements called for in the claims of the Schmidtke patent and do not teach the Schmidtke invention. There were no prior continuous stave baskets or basket machines or method which tend to limit the scope of the Schmidtke claims as the so called three hoop round bottom basket followed the Schmidtke invention. The evidence discloses that the early British or Pratt basket does not establish an anticipation of the Schmidtke patents, nor is there any evidence of any prior basket, basket machine or method, which would limit the scope of the Schmidtke claims.

Where a situation exists as here due to the relationship existing between the parties such as a claim by a licensor against a licensee, the patents and methods should be given a broad interpretation. Freeman et al. v. Altvater et al., 8 Cir., 66 F.2d 506.

The plaintiffs sent out notices after the termination of the license agreement, advising the public that Kull was no longer

a licensee and that the baskets Kull was making were an infringement of the patents. These notices appear to be fair for Kull was a licensee for a period of years and his agents and customers believed that they had the right to purchase baskets from him without fear of infringement. The location and names of these customers were unknown to the plaintiffs and, in order to protect themselves, they were obliged to send out the notices and were legally obligated to do so in the event they thereafter desired to institute suit against any infringer. 35 U.S.C.A. § 49. No evidence appears that any damage or confusion has occurred to defendants by reason of the kind of notices sent out by plaintiffs.

So from what has been said, as disclosed by the evidence, infringement of the claims of the Schmidtke patents by the defendants seems clear and the patents are valid, and that an accounting be made by the defendants and damages suffered, if any, by the plaintiffs.