**HOPE BASKET CO. et al. v. PRODUCT ADVANCEMENT CORP. et al.**

**PRODUCT ADVANCEMENT CORP. et al. v. HOPE BASKET CO. et al.**

Nos. 11241, 11242.

United States Court of Appeals
Sixth Circuit.

March 29, 1951.

Edwin T. Bean, Buffalo, N. Y., Herbert H. Porter, Washington, D. C., Edwin T. Bean, Buffalo, N. Y., on brief; Harold W. Bryant, Grand Rapids, Mich., of counsel, for Hope Basket Co.

Lloyd C. Root, Chicago, Ill., Spencer, Johnston, Cook & Root and Lloyd C. Root, all of Chicago, Ill., Frank E. Liverance, Jr., Grand Rapids, Mich., on brief, for Product Advancement Corp.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

This action was filed by the Hope Basket Company and the Walter Verhalen Company to determine their rights as licensees under five royalty license agreements executed April 1, 1930, and to have Schmidtke Basket Patent No. 1,895,586 declared invalid. They have appealed from a ruling adverse to their claims under the license agreements and upholding the validity of the patent. The defendants below, Product Advancement Corporation and St. Joe Machines, Inc., have appealed from that portion of the judgment which denied them a recovery of damages and sought by way of counter-claim. The appeal and cross-appeal were heard together on a joint record.

The facts are stated in detail in the opinion and findings of the District Judge, reported in 89 F.Supp. 116. A short résumé will suffice for this opinion. The plaintiffs and defendants below will be referred to as appellants and appellees, respectively.

The appellant, Hope Basket Company, is engaged in the manufacture of baskets at Hope, Arkansas. The appellant, Walter Verhalen Company, is a partnership of Dallas, Texas, and is the principal stockholder and the sales agent of the basket company.

The appellee, Product Advancement Corporation, of Benton Harbor, Michigan, hereinafter referred to as Advancement Corporation, is successor by change of name to the Strait Side Basket Corporation and is engaged in licensing the manufacture of baskets under certain patents, including those involved in this action. The appellees, St. Joe Machines, Inc., of St. Joseph, Michigan, hereinafter referred to as St. Joe, is successor by change of name to the St. Joe Iron Works and manufactures machinery and machine attachments for making baskets.

Albert H. Schmidtke, an employee of St. Joe, filed in the Patent Office on March 25, 1926, an original patent application entitled "Basket and Method and Apparatus for Making Same." The Patent Office required a division of the application between the method and apparatus claims and the basket claims, and a divisional application on the basket claim was filed and was copending with the said original basket application. These patent applications were assigned to St. Joe. The Schmidtke Method and Apparatus Patent No. 1,752,852 was issued April 1, 1930, and it is referred to hereinafter as the machine patent. The Schmidtke Basket Patent No. 1,895,586 was issued January 31, 1933 and is referred to hereinafter as the basket patent. The appellee, St. Joe, granted the appellee, Product Advancement Corp., exclusive licensing rights under the Schmidtke patent application and under both the Schmidtke machine patent and basket patent.

Advancement Corporation called a meeting of basket manufacturers for April 10, 1930 in Cincinnati, Ohio, for the purpose of licensing manufacturers to use certain machine attachments and to manufacture baskets. At that meeting a proposed printed form of attachment license was submitted to the basket manufacturers and discussed. The first paragraph of Section 15

was criticized on the ground that it did not by its terms specifically include the basket patent, not yet issued. Accordingly, Section 25, reading as follows, was added to the printed form:

"(25) It is agreed that paragraph 1 of Section 15 is cancelled and the following is substituted therefor:

"Licensee admits the validity for the full terms expressed in the grants thereof of all the patents, respectively, covered by this license, and it is understood that this agreement also covers patents hereafter issued to Licensor, on the subject matter of these patents."

The appellants and the appellee, Advancement Corporation, entered into five separate attachment license agreements as of April 1, 1930 covering five machine attachments therein referred to. The parties operated under these licenses until about 1940 when some question arose concerning what baskets were covered. The matter was adjusted by a supplemental agreement executed in 1940. The appellants continued to operate under these agreements, paying the specified royalties, until several months after the expiration of the machine patent on April 1, 1947.

On January 8, 1948, appellants wrote Advancement Corporation that the Attachment Licenses terminated as of April 1, 1947, the date on which the Schmidtke machine patent No. 1,752,856 expired, confirmed the termination of the licenses as of that date; stated that the basket patent was not set out in the license agreement, was not operative against them because they had already paid royalties under the machine patent for 17 years, and, in any event, was void; and demanded repayment of $2,800.49 paid in error as royalties under the Attachment License on sales of baskets since April 1, 1947. Two days later appellants filed this declaratory judgment action setting out these contentions and asking that they be upheld. Appellees by answer asserted that the basket patent was valid; that appellants as licensees thereunder were estopped to contest its validity; that the basket patent was within the terms of the Attachment Licenses; that the licenses did not terminate on April 1, 1947, but

continued in force during the life of the basket patent which would expire January 31, 1950; and that the baskets manufactured and sold by appellants after April 1, 1947 were within the claims of the basket patent. The appellees also filed a counter-claim which alleged that appellants had wrongfully induced other basket manufacturers who had executed attachment licenses to breach their licenses and refrain from paying royalties to appellee's damage. The District Judge upheld the contentions of the appellees with the exception of the damages sought by their counter-claim. The appeal and cross-appeal followed.

■■ We agree with the ruling of the District Judge that the basket patent is included within the terms and scope of the Attachment Licenses. As pointed out by him, the change in Section 15 made by Section 25 at the Cincinnati meeting was for the purpose of removing possible doubt about the inclusion of the basket patent, and specifically provided "this agreement also covers patents hereafter issued to Licensor, on the subject matter of these patents." When the basket patent was subsequently issued, Advancement Corporation sent its Bulletin No. 76, dated February 3, 1933 to its licensees, including appellants, advising them of the issuance of the patent and that these additional rights accrued to the licensees through the license agreement. For many years thereafter appellants manufactured baskets which came within claim 2 of the basket patent and paid royalties thereon. Although they were licensees, they were not barred from contesting appellees' construction of the contract. See Westinghouse Co. v. Formica Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316. The District Judge pointed out other facts supporting this conclusion, which we need not repeat here. In support of their contention to the contrary, appellants point out that the Agreements specifically identify the machine patents by number, make no specific reference to any pending application for a basket patent, although such an application was pending, and that appellants did not stamp their baskets with the number of the basket patent. The evidence shows,

however, that appellants requested dies for the purpose of so marking the baskets, but that the Licensor did not furnish them as it was not required by the Agreement to do so. The evidence, on the whole, fully sustains the Court's ruling.

■ Section 18 of the Attachment License provided that the contract would terminate "at the expiration of the longest lived patent now or hereafter covering the said attachment, methods, or processes licensed hereunder." Since the basket patent was covered by the contract, it follows that the license did not terminate until the expiration date of that patent, namely, January 31, 1950, rather than on April 1, 1947 as contended by appellants.

■ It is settled law that a licensee of a patent is estopped to contest its validity in a claim for royalties. United States v. Harvey Steel Co., 196 U.S. 310, 317, 25 S.Ct. 240, 49 L.Ed. 492; Westinghouse Co. v. Formica Co., 266 U.S. 342, 349, 45 S.Ct. 117, 69 L.Ed. 316; Reynolds Metals Co. v. Skinner, 6 Cir., 166 F.2d 66, 73. This action was brought while the license was still in existence, so it is not necessary to rely upon the express covenant contained in Section 15 of the Attachment License preventing the licensee from contesting the validity of the patent after the termination of the license. Eskimo Pie Corp. v. National Ice Cream Co., 6 Cir., 26 F.2d 901. This basic rule of estoppel may have been somewhat modified by the ruling in Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, relied upon by appellants, but it was not abolished. In fact, that case restated the rule, and then held that the rule did not prevent an assignee from using the invention of an *expired* patent. In the present case, the appellants are charged with using the invention of the existing basket patent. Nor do we think that the Supreme Court decisions in Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374, and MacGregor v. Westinghouse Co., 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380, also relied upon by appellants, prevent the rule from applying. Those cases turned on the existence of price fixing provisions in the license agreements. The Attachment Licenses in the present case contained price fixing provisions in Section 24, but the evidence clearly shows that they were eliminated from the agreement on July 19, 1940 and that this modification of the agreement was subsequently acknowledged and agreed to by the appellants by letter of August 8, 1945. The appellants thereafter operated under and thereby ratified the revised agreement. They are estopped from attacking the validity of the basket patent in this proceeding.

■ Disregarding the estoppel feature of the case, it appears that the validity of Claim 2 of Basket Patent No. 1,895,586, which is involved in this case, has previously been considered by this Court and held to be valid. Straight Side Basket Corp. v. Zapf Fruit Package Co., D.C.W.D. Mich., 26 F.Supp. 90; affirmed 6 Cir., 99 F. 2d 1015. See also Straight Side Basket Corp. v. Kull, D.C.Idaho, 24 F.Supp. 771 appeal dismissed 9 Cir., 104 F.2d 1015. The question is well discussed in those opinions. We adhere to our previous ruling.

■ Nor do we agree with appellants' contention that the basket patent constituted double patenting and is therefore void for illegally extending the patent monopoly. We recognize the general principle that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, and in such a case the second patent is void because it would prolong the monopoly beyond the 17-year period allowed by the patent law. Miller v. Eagle Mfg. Co., 151 U.S. 186, at page 198, 14 S.Ct. 310, at page 315, 38 L.Ed. 121. However, it is well settled law, as stated in that case, "where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained." As an example, it is not double patenting when an inventor makes a new improvement on his own invention of a patentable character, for which he may obtain a separate patent. Where the invention is distinctly different and independent from that covered by the first patent, a later patent may be validly granted. Thomson-Houston Electric Co. v.

Ohio Brass Co., 6 Cir., 80 F. 712; Wirebounds Patents Co. v. Saranac Automatic Machine Corp., 6 Cir., 37 F.2d 830; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 2 Cir., 22 F.2d 259; Montgomery Ward & Co., Inc., v. Gibbs, 4 Cir., 27 F.2d 466. In the present case, the Patent Office required divisional applications for the machine and basket patents. Thereafter, the applications were co-pending in the Patent Office. The claims in the machine patent covered a machine for making a basket. The claims in the basket patent covered a basket. The baskets can be made by hand or by other methods without infringing the machine patent. There are other patented basket machines available. Dudley Patent No. 1,751,728; Craig Patent No. 1,757,294. Different baskets from those specified in the basket patent can be made on the Schmidtke machine patent herein involved. We agree with the District Judge that the basket patent represents a distinct and separable invention from that of the prior machine patent and accordingly does not violate the rule against double patenting.

Appellants further contend that even if it should be held that the basket patent is valid, nevertheless, the baskets made and sold by them do not come within the scope of Claim 2 of the basket patent and therefore are not subject to the payment of royalties. It seems clear that such a contention can be properly made in this proceeding regardless of the rule of estoppel usually applicable to licensees. Westinghouse Co. v. Formica Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541, 543. Claim 2 of the basket patent reads: "2. A container formed out of a plurality of veneer strips each comprising a bottom member and an integral pair of staves, each stave being bent up angularly to the bottom member, all of the bottom members crossing each other, and a plurality of spaced hoops secured to the outer sides of the staves one of said hoops being located adjacent the ends of the bottom members, said bottom members being bowed inwardly of the container and held from straightening out by the latter hoop."

Appellants contend that the baskets manufactured by them differ from one stated by this claim in the following particulars: (1) The lower edge is rounded and not bent up angularly; (2) the lower hoop is not adjacent the ends of the bottom members and is not the sole means for preventing the bottom members from straightening out. They claim that in baskets manufactured under the patent the bottom mat is sharply folded and bent upward at an abrupt angle rather than rounded; and that the lower edge of the bottom hoop is directly at or a little below the bottom. This contention was fully discussed and rejected by the District Judge in his opinion and findings hereinabove referred to. We agree with his reasonings and conclusions. As pointed out in Straight Side Basket Corp. v. Zapf Fruit Package Co., 6 Cir., supra, the specifications place stress upon maintenance of the bowed or arched condition of the bottom members by the bottom hoop. It is immaterial whether the lower edge of the bottom hoop extends below the bottom of the basket or is slightly above the bottom of the basket so long as it is not too far from the bottom of the basket to perform its function of maintaining the bowed or arched condition of the bottom members. Even though the bottom hoop is slightly above the bottom of the basket, it is still "located adjacent the ends of the bottom members," as stated in Claim 2. In appellants' baskets the distance from the floor line of the bottom of the basket to the lower edge of the bottom hoop was from a minimum of ⅛ inch to a maximum of 7⁄16 inch. The evidence showed that if the bottom edge of the lowermost hoop was less than an inch from the bottom of the basket the hoop would perform the function of maintaining the arch in the bottom of the basket, in that it would not be above the top of the arch. The issue herein involved is well presented by the two cases of Straight Side Basket Corp. v. Zapf Fruit Package Co., supra, D.C., 26 F.Supp. 90, and Straight Side Basket Corp. v. Kull, supra, D.C., 24 F.Supp. 771, 774. Appellants rely upon the ruling in the Zapf case

wherein it was held that the baskets in controversy, which had hoops placed at a distance from ⅛ to ¼ of an inch above the bottoms of the baskets, did not infringe the patent. Appellees rely upon the ruling in the Kull case wherein it was held that the baskets in controversy, which had hoops at a distance of approximately ¼ to ⅜ of an inch above the bottoms of the baskets, did infringe the patent. The different rulings, however, appear not to rest upon the exact measurement between the lower edge of the bottom hoop and the bottom of the basket, but rather upon the question of whether the location of the bottom hoop was in such a position as to perform its function of preserving the bottom arch of the basket. In the Zapf case the Court held that the hoops were placed at a distance above the bottoms of the baskets where they were insufficient to preserve the bottom arch and that the resulting difference in function was sufficiently substantial to avoid infringement. In the Kull case, the Court held that the lowermost hoop on the basket involved performed the same function as the hoop stated in the patent and therefore constituted an infringement. The opinion said: "It is immaterial under the law on which parts of the combination the hoops or other parts in controversy are located so long as they function alike in both structures and the same results are obtained." In the present case, the lowermost hoops on the baskets of the appellants, even though placed slightly above the bottoms of the baskets, performed the same function stated in Claim 2 of the basket patent, and in our opinion are covered by the patent.

This conclusion is supported by the Supplemental Agreement executed by the parties in 1940, wherein certain existing differences between the parties were settled. By Paragraph 2 of that agreement, the licensees in the Attachment Licenses agreed that the patents "cover all continuous stave baskets wherein the majority of the basket bottom forming portions of the staves are arched upwardly to any extent whatsoever, and wherein the lower hoop applied while the staves are arched is located with its lower edge no farther from the floor line than the upper surface of the uppermost one of the crossed staves at the point in the basket bottom where the staves cross one another. And Licensees agree that they will regard all baskets of the kind defined above as coming under and being covered by the said Attachment License agreements and will pay the specified royalty thereon. And Licensees will pay the license fees as provided in said attachment license agreements on all baskets of the above description manufactured by licensees, regardless of the method of manufacture used by licensees in manufacturing the same." Subsequent to April 1, 1947, the appellants continued to make and sell substantially the same basket that they had been making theretofore.

The rule of D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, 240, 241, even if otherwise applicable, would not here be applied because of the agreement above referred to, which is a practical construction of the patent claims.

Appellees, by cross-appeal, complain of the Court's ruling which dismissed their counter-claim for damages, which charged the appellants with inducing other basket manufacturers to breach their licenses and to discontinue the payment of royalties thereunder to the appellees. They rely upon the legal proposition announced in the well-known English case of Lumley v. Gye, 2 El. & Bl. (Q.B. 1852), 216 (118 Eng. Reprint 749), and recognized and applied in Morgan v. Andrews, 107 Mich. 33, 64 N.W. 869 and Wilkinson v. Powe, 300 Mich. 275, 1 N.W.2d 539, 542, namely, that an action for damages lies against one who is not a party to a contract but who wrongfully induces a breach or termination thereof. In Wilkinson v. Powe, supra, it is stated: "A prima facie case is established when plaintiff proves the intentional procurement of a breach of contract, and, upon such proof, it becomes incumbent upon defendant to show justification. * * *

"No categorical answer can be made to the question of what will constitute justification, and it is usually held that this question is one for the jury. See cases collected

in 84 A.L.R. [p.] 81." The District Judge was of the opinion that this was a test case, prosecuted by appellants on behalf of themselves and othes licensees of Advancement Corporation, and that persuading and inducing other patent licensees to cease paying royalties and to contribute to a fund to be used in connection with prosecution of the present suit was not an act of bad faith made actionable by the rule. Appellees contend that the Court erred in basing its ruling upon the lack of bad faith, in that under the authorities referred to the intentional procurement of the breach of contract is actionable, regardless of bad faith. We believe it is clear, however, that the District Judge's statement that the appellants were not acting in bad faith was merely a statement of his reason for ruling that they were justified in so acting. It was not a charge to a jury, and the wording complained of was not prejudicial. We construe the ruling of the District Judge to be a finding that under all the facts and circumstances of the case the appellants and the other licensees were justified in discontinuing the payment of royalties after the termination of the machine patent and in having the question of further liability for royalties judicially determined. We accept the finding on this review. Under the rule as stated in Wilkinson v. Powe, supra, such justification is a defense to the action.

The judgment of the District Court is affirmed.